(662 P.2d 264)
No. 55,282

No. 55,304

THE GAS SERVICE COMPANY, *Appellant*, v. THE STATE CORPORATION COMMISSION OF KANSAS, Richard C. (Pete) Loux, Chairman; Jane T. Roy and Phillip R. Dick, Commissioners; and their Successors in Office as Members of The State Corporation Commission of the State of Kansas, *Appellees*, and MIDWEST GAS USERS ASSOCIATION and THE W. S. DICKEY CLAY PRODUCTS MANUFACTURING COMPANY, *Appellants*, v. THE STATE CORPORATION COMMISSION OF KANSAS, *et al., Appellees.*

Opinion filed April 14, 1983.

*Richard C. Byrd* and *Walker A. Hendrix*, of Anderson, Byrd & Richeson, of

Ottawa, and *Gerald T. McNeive, Jr.,* of Kansas City, Missouri, for appellant The Gas Service Company.

*W. H. Bates* and *Stuart W. Conrad,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Kansas City, Missouri, and *Thomas L. Theis,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellants Midwest Gas Users Association, *et al.*

*LuAnn C. Dixon* and *James G. Flaherty,* assistant general counsels, of State Corporation Commission, for appellees.

*Patrick H. Donahue* and *Joseph V. Willey,* of Kansas Legal Services, Inc., of Topeka, for intervenors Walter and Theda Marxen.

*Thomas L. Theis,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, and *R. Brian Corcoran,* of Connole and O'Connell, of Washington, D. C., for intervenor Owens-Corning Fiberglas Corporation.

Before ABBOTT, P.J., REES and PARKS, JJ.

ABBOTT, J.: This is a review of two orders of the State Corporation Commission of Kansas arising from a rate hearing, pursuant to K.S.A. 66-118d. Both orders appealed from resulted from an application by The Gas Service Company (Gas Service) for a rate increase of $20,310,464 (Docket No. 132,996-U).

Midwest Gas Users Association (Midwest Gas Users), the W. S. Dickey Clay Products Manufacturing Company (W. S. Dickey Company), Owens-Corning Fiberglas Corporation (Owens-Corning), and Walter and Theda Marxen (Marxens) separately intervened and participated in the proceedings before the corporation commission. Three other corporations that also were allowed to intervene are not parties to this appeal.

The testimony and exhibits were presented on the basis of a historical test year for the twelve-month period ending December 31, 1981, with certain adjustments. The Commission granted a rate increase of $7,693,000. This appeal followed.

Gas Service requested a review in which it raises four issues as follows:

1. The Commission erred in crediting Gas Service for sales to the Phillips Petroleum refinery when the refinery was permanently closed;
2. The Commission erred in disallowing Gas Service expenses for dues, donations and charitable contributions;
3. The rate design adopted by the Commission impairs the financial integrity of Gas Service and creates revenue instability, fosters more frequent rate applications and

unfairly increases winter bills to the detriment of many poor people; and

4. The Commission erred in not granting a generic hearing of all utilities on line extension policy.

Midwest Gas Users and W. S. Dickey Company requested review in which they basically raise two issues. They argue that the increase allowed on a volumetric basis is unsupported by substantial competent evidence; that the increase should have been allowed on a customer-cost basis (a higher set monthly charge to each customer); and that costs associated with natural gas lost by Gas Service in servicing the customers of the SEKCO gas system should not be spread system-wide. The two proceedings were consolidated in this court. Owens-Corning and the Marxens were allowed to intervene. Owens-Corning argues that the increase should have been allowed on a customer-cost basis; that the decision not to assign any part of the increase to the customer charge is not supported by substantial competent evidence; and that it improperly shifts costs from one group of customers to another. The Marxens take the position the Commission's orders are lawful and reasonable in toto.

Our standard of review is well defined, is recognized by all parties and need not be set forth in detail. See *Peoples Natural Gas v. Kansas Corporation Commission,* 7 Kan. App. 2d 519, 521, 644 P.2d 999, *rev. denied* 231 Kan. 801 (1982); *Sekan Electric Coop. Ass'n v. Kansas Corporation Commission,* 4 Kan. App. 2d 477, 478, 609 P.2d 188 (1980); *Southwestern Bell Tel. Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 44, 46, 602 P.2d 131 (1979), *rev. denied* 227 Kan. 927 (1980); *Sunflower Pipeline Co. v. Kansas Corporation Commission,* 3 Kan. App. 2d 683, 685, 600 P.2d 794 (1979); *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979).

In addition, a panel of this court held in *Kansas-Nebraska Natural Gas Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 674, 675, 610 P.2d 121, *rev. denied* 228 Kan. 806 (1980):

"K-N contends that the KCC order is both unlawful and unreasonable. It further argues that the approved rates are confiscatory and violate its constitutional right to due process because they would not produce a reasonable return or just compensation upon the value of its property. K-N's argument relating to confiscation attempts to broaden our scope of review to include an independent judicial judgment on the facts as well as the law.

"*The statutory standard of K.S.A. 1979 Supp. 66-118d requiring 'reasonable'*

*utility rates is higher than the constitutional standard for due process. In other words, a rate cannot be confiscatory if it is reasonable.* Therefore, even if the scope of review is broader for a due process complaint, a determination that a rate order is reasonable would logically preclude consideration of an allegation of confiscation. In *Power Comm'n v. Hope Gas Co.*, 320 U.S. 591, 88 L.Ed. 333, 64 S.Ct. 281 (1944), the U.S. Supreme Court said, 'If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry  .  .  .  is at an end.' *Hope,* 320 U.S. at 602. The Court also said, 'Since there are no constitutional requirements more exacting than the standards of the Act, a rate order which conforms to the latter does not run afoul of the former.' *Hope,* 320 U.S. at 607. Accordingly, our review is limited to the statutory standard of K.S.A. 1979 Supp. 66-118d." (Emphasis supplied.)

In *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 5 Kan. App. 2d 653, Syl. ¶ 3, 623 P.2d 924, *rev. denied* 229 Kan. 670 (1981), it was held: "The matter of rate design involves a policy decision which is legislative in nature, and the Commission's orders in that regard demand utmost deference from the judicial branch."

With our basic scope of review in mind, we turn to the issues in this case.

Gas Service attempted to adjust its test-year operations to reflect that the Phillips Petroleum refinery had closed after the test year. Gas Service deleted revenues of $17,824,451 for natural gas sold to the refinery during the test year and deleted an expense of $15,086,606 for the cost of gas sold. When the rate increase application was heard, the refinery had closed and there was no reasonable expectation that it would reopen.

Gas Service's argument in part is that the Commission on at least one prior occasion has allowed an adjustment to a test year so as to recognize the loss of sales to a refinery being closed; that the loss is known and measurable; and that by allowing an increase on a volumetric basis, the Commission is using $17,824,451 in sales it knows will not take place, thus preventing Gas Service from earning the rate of return the Commission has found to be reasonable.

To put the loss of the Phillips Petroleum refinery into perspective, the Commission's staff testified that during the test year the refinery accounted for approximately 30 percent of all Gas Service's sales to large industrial customers and for approximately 5 percent of its *total* sales.

The Commission's order gives two reasons for disallowing the proposed adjustment. Its first is, "We do not believe that appli-

cant should be allowed to pass the loss in revenues associated with one large industrial customer on to the customers remaining on the system." Its second is that Gas Service has not shown that the fixed costs associated with service to the Phillips refinery are necessary to provide service to the remaining customers. We were informed at oral argument that the refinery is serviced by a line connected to Cities Service's supply line to Gas Service and that the only fixed cost to Gas Service is the meter and its upkeep. Counsel for the Commission was unable to suggest any other fixed cost to Gas Service. Obviously there are other minor costs—the meter must be read and bills computed, delivered and collected. However, any such costs would be insignificant compared to the total sales (on which Gas Service received nearly a 20 percent profit). The Commission audited Gas Service, but it does not suggest what fixed costs Gas Service *might* save as a result of the lost sales to the refinery. We recognize it is the burden of Gas Service to prove its case. But to deny the entire adjustment because Gas Service did not offer evidence concerning such an insignificant sum is, in our opinion, unreasonable.

We have had occasion in the past to discuss an adjustment to a test year. In *Gas Service Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 623, 609 P.2d 1157, *rev. denied* 228 Kan. 806 (1980), we stated:

"The general rule is that the Commission may not arbitrarily disallow an actual, existing operating expense incurred during a test year. See *Application of Wilm. Suburban Water Corp.,* 58 Del. 494, 504, 211 A.2d 602 (1965). A corollary to the general rule is that claims for future expenses which are merely conjectural should not be allowed in rate proceedings. *Re Mountain States Teleph. & Teleg. Co.,* 14 Pub. U. Rep. 3rd 230, Syl. ¶ 8 (Wy. 1956). With respect to adjustments outside the test year, the following excerpts fairly summarize the applicable law: " 'Although the use of a test year is proper, the Commission, in exercising its legislative function of fixing utility rates for the future, should not be blind to the future. It may adjust the results of the test year by allowing for *known changes* to make the test year representative of the future. . . .' *Commonwealth v. VEPCO,* 211 Va. 758, 771, 180 S.E.2d 675, 89 Pub. U. Rep. 3d 395 (1971) (emphasis added).

" 'Ratemaking, by its very nature, is prospective and in order to neutralize the negative effects of speculation and guesswork about future economic conditions, it is accepted practice to base future rates upon known past and present conditions through the use of data gathered during a specified test period. [Cite omitted.] This process of prognostication creates a conflict between the need to lend some finality to ratemaking by utilizing a well-defined, finite test period and the need to base calculations upon the latest available relevant data which often

pertains to time periods other than the test period. [Cite omitted.] A satisfactory resolution of this conflict is that when *known and measurable* post-test-year changes affect with certainty the test-year data, *the commission may, within its sound discretion,* give effect to those changes. [Cite omitted.]' *Narragansett Elec. Co. v. Harsch,* 117 R.I. 395, 416, 368 A.2d 1194 (1977)." 4 Kan. App. 2d at 635-36 (emphasis original).

Accord *Kansas Power & Light Co. v. Kansas Corporation Commission,* 5 Kan. App. 2d 514, 517, 620 P.2d 329 (1980), *rev. denied* 229 Kan. 670 (1981).

The Commission recognized the known and measurable test in making a number of staff-proposed adjustments to the test year. We conclude the Commission abused its discretion and unreasonably refused to adjust the test year to recognize the loss of sales to the refinery. We also recognize our decision to be a hollow victory for Gas Service, because it has applied for another rate increase which will replace any increase the Commission ultimately makes in this proceeding. In addition, any such increase will be applicable during the summer months when natural gas sales are low, so the practical effect of our decision will be of little consolation to Gas Service.

Gas Service also argues the Commission erred in disallowing as operating expenses the dues and charitable donations made during the test year. The Commission disallowed *all* of the contributions and dues and devoted some three pages of its order to explaining why it was doing so. The Commission basically determined ratepayers should not be required to involuntarily pay dues and charitable donations made by a utility. It further determined there was a lack of evidence by Gas Service to show the reasonableness of any of the dues and charitable donations. We deem the latter argument to be of no real significance. For at least twenty years, utilities have been allowed to include in operating expenses the dues and charitable donations they pay, subject only to a reasonableness standard. Most of the $105,041 disallowed here (about 25 cents a year per user) was given to legitimate, recognized charitable organizations such as United Way, Heart Association, Menninger's, and educational institutions. In addition, Gas Service paid dues such as those to Chamber of Commerce, and to Rotary Club and Kiwanis Club for its key employees. Staff counsel conceded at oral argument that the Commission is now disallowing charitable donations and dues as a matter of policy, and we deem that to be the issue

before us. The list of charitable donations and dues paid by Gas Service is such that it would be unreasonable to disallow them in toto, for at least a substantial number of them are reasonable on their face without further evidence as to their reasonableness. Thus, the issue before us is not their reasonableness but whether the Commission can, as a matter of policy, disallow *all* dues and charitable contributions as operating expenses.

The Supreme Court in *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, Syl. ¶ 8, 386 P.2d 515 (1963), stated:

"The reasonable cost of meeting civic responsibilities such as Chamber of Commerce dues and charitable donations should be allowed as an operating expense in a public utility rate investigation, but they are subject to close scrutiny as to reasonableness."

In the absence of some indication that the Supreme Court will no longer follow its earlier decision, we are duty-bound to follow its prior case law. Although only one member of the court that wrote *Southwestern Bell Tel. Co.* is still a member of the Supreme Court, we have no indication the Court would change its position. We are aware of the considerable authority existing to support the argument that whether to allow dues and charitable donations as operating expenses is a political issue to be decided by the legislature and not a legal issue. However, the Supreme Court has spoken, and since we are of the opinion that *Southwestern Bell Tel. Co.* controls the proceeding before us, we are duty-bound to follow it. In the future, if the Commission on remand truly believes any charitable donations or dues are unreasonable, it should state specifically which it finds to be unreasonable and its reasons for so finding.

Midwest Gas Users requested at oral argument that we consider an issue not raised in the rate hearing and not briefed by the parties, and that is whether the Commission is subject to the open-meeting law and, if so, whether a new hearing is required. We do not deem the issue to be such that its consideration is necessary to serve the interests of justice or to prevent the denial of fundamental rights (*State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 [1982]), thus we decline to consider the issue.

We have examined the argument of Midwest Gas Users, W. S. Dickey Company and Owens-Corning concerning the Commission's order allowing a rate increase on a volumetric basis rather

than on a customer-cost basis. It is our opinion that the rationale for our decisions in *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 5 Kan. App. 2d 653, and *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, is applicable, and we cannot say that the rate schedules approved by the Commission are unlawful or unreasonable.

Gas Service argues the Commission should have granted a "generic hearing" for all state utilities involved because Gas Service is placed at a competitive disadvantage in competing for new customers in some areas of the state since Commission regulations are not uniform. Gas Service cites no authority for its position. After examining the record we conclude the Commission has considerable discretion in the area involved, and we cannot say it was unreasonable or unlawful for the Commission to suggest that the problem could be adequately addressed in proceedings already pending before the Commission.

We have examined the arguments of Midwest Gas Users concerning the allocation of line losses to the interruptible class and note that its application for rehearing is limited to a contention that the order spreading the line losses was unsupported by substantial competent evidence. Our examination of the record, particularly Ballonoff's testimony, satisfies us that substantial competent evidence is present to support the Commission's decision, and that portion of the order is both reasonable and lawful.

Those parts of the Commission's order in docket No. 132,996-U that refuse to adjust the test year to recognize the loss of sales to Phillips Petroleum refinery and disallow as operating expenses in toto the dues and charitable donations made by Gas Service during the test year are unreasonable and are hereby vacated.

Affirmed in part, reversed in part and remanded to the State Corporation Commission for further proceedings.