SOUTHERN UNION GAS
COMPANY, Appellant,

v.

RAILROAD COMMISSION OF TEXAS,
et al., Appellees.

No. 14399

Court of Appeals of Texas,
Austin.

Oct. 9, 1985.

Rehearing Denied Jan. 8, 1986.

Barry Bishop, Clark, Thomas, Winters & Newton, Austin, for appellant.

Jim Mattox, Atty. Gen., Jo Campbell, Asst. Atty. Gen., Austin, for Railroad Com'n of Texas.

Norman J. Gordon, Diamond, Rash, Leslie & Smith, El Paso, for the City of El Paso.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

BRADY, Justice.

The Texas Railroad Commission ordered a reduction in the rate charged by appellant, Southern Union Gas Company, for natural gas service in the cities of El Paso and Clint. The effect of this final order of the Commission was to decrease Southern Union's revenues by $456,351. The trial court affirmed the Commission's order. We affirm the judgment of the trial court.

By five points of error, the gas company argues that the trial court erred in affirming the Commission's order because; (1) the working capital allowance set by the Commission is not supported by any evidence or substantial evidence; (2) the Commission's disallowance of expenses for rate purposes was an abuse of discretion; (3) the Commission's treatment of investment tax credit violates the statutory provisions and intent of the tax credit and was an abuse of discretion; (4) the Commission's allowance for "vacant jobs" violates the statute and is arbitrary, capricious and contrary to the substantial evidence; and (5) the effect of the Commission's action fails to permit recovery of the company's expenses together with a reasonable return on invested capital.

In 1981, the gas company employed an expert to perform a lead/lag study to determine the amount of working capital it needed. This study measured the time periods involved in the utility's cash/expenditures and cash receipts. This study performed for Southern Union determined its working capital need to be $28,855.

In 1983, when the utility filed a statement of intent with the Commission to increase its rates in the El Paso area, certain attached schedules were incorporated and made a part of its statement. This included the working capital need of $28,855 as described by the lead/lag study. Subsequently, the utility presented evidence at a consolidated hearing, abandoned its lead/lag study, and switched to a formula commonly referred to as the "45 day rule" or the "⅛ rule." By changing its formula, Southern Union increased its revenue deficiency and increased its claim for working capital to $1,248,347. This was over a 4000 percent increase in working capital.

The burden of proof is upon the utility to prove why its working capital needs had increased from $28,855 to $1,248,347. Tex. Rev.Civ.Stat.Ann. art. 1446e § 5.04(b) (Supp.1985) (hereinafter, GURA); *Suburban Utility Corporation v. Public Utility Commission*, 652 S.W.2d 358 (Tex.1983). The lead/lag study relied upon by Southern Union as late as November 1983, some eight months after the end of its test year, showed its working capital need to be $28,855. The utility failed to show that any specific change had occurred which would result in any change in the lead/lag study.

The cash-flow analysis made by the company fails to meet its burden. All this does is show the extent of liquidity of the company on the particular day it was made and does not measure the time or date between expenditures and income.

Appellant relies on the three Lone Star cases written by this Court: *Railroad Commission of Texas v. Lone Star Gas Co.*, 611 S.W.2d 908 (Tex.Civ.App.1981, writ ref'd n.r.e.); *Railroad Commission of Texas v. Lone Star Gas Co.*, 611 S.W.2d 911 (Tex.Civ.App.1981, writ ref'd n.r.e.) and *Railroad Commission of Texas v. Lone Star Gas Co.*, 618 S.W.2d 121 (Tex.Civ. App.1981, no writ). However, these cases can be readily distinguished. In these cases, the Commission relied on its own expertise as a substitute for the record, basing its decision on a controversial methodology that was used after the hearing had closed without affording the utility to cross-examine the Commission's use of such methodology. The case at bar does not present this fact situation.

Appellant's argument stated another way is that the lead/lag study made by it for its rate increase application, filed before the local regulatory authority, was not introduced into evidence before the Commission. However, examination of the record indicates clearly that the study which appellant had presented to the City at the municipal rate proceeding in November 1983, which showed a working capital need of only $28,855, was offered by the City and admitted into evidence before the Commission as Exhibit No. 6. We overrule appellant's first point of error.

■ Appellant's second point complains that the Commission and the trial court erred when it recognized that certain expenses, although improper for ratemaking purposes, served as income tax deductions when it determined the amount needed for Southern Union's income tax allowance. The utility concedes that the expenses are improper for ratemaking purposes. The utility argues, however, that such should also be excluded for tax purposes, thus, increasing the utility's "theoretical" tax lia-

bility. Appellant says this was "double dipping" in favor of the ratepayers at the expense of the shareholders of the company. The appellant, however, cites us no authority for its argument; we therefore reject it.

In *Suburban Utility, supra,* the Texas Supreme Court stated that expenses comprising a utility's cost of service "are limited to amounts *actually realized* or which can be anticipated with reasonable certainty." (emphasis added). *Id.* at 362. The Court, which relied on *Federal Power Commission v. United States Pipe Line Co.*, 386 U.S. 237, 87 S.Ct. 1003, 18 L.Ed.2d 18 (1967), held in an analogous situation that the Commisssion was not required to grant a hypothetical tax expense because to do so would give the pipeline company and its stockholders not only the fair return to which they are entitled, but also the full amount of an expense it never, in fact, incurred. There the utility complained that the Commission had applied losses incurred by its affiliates to reduce the utility's income tax allowance. The court said that the Commission had the power and duty to limit the utility's costs of service to real expenses, including income tax allowance.

Utility rates should reflect actual, incurred costs and the manipulation of the income tax allowances should not be used as a method of artificially increasing the utility's revenue requirement. Therefore, we hold that the trial court did not err in holding that the Commission did not abuse its discretion in disallowing "theoretical" income tax liability for ratemaking purposes.

■ Appellant's third point argues that the Commission's treatment of investment tax credits violates the statutory provisions and intent of the tax credit, was retroactive ratemaking, and an abuse of discretion. The Commission requested that the utility prepare and file an exhibit showing all its investment tax credits received by the company since 1971. By spreading the amount of credit over the life of the property, the Commission thus computed a ratable por-

tion of the tax credit to be applied to the test year in question.

Southern Union calls this a "phantom" credit, and argues that it does not exist. Appellant's theory is that since the tax credit was received in 1971, that money saved was spent either in "dividends to shareholders, other investment, or other expenses ..." Further, the utility contends that it is "retroactive ratemaking in the purest sense." We disagree.

Congress enacted the investment credit to apply against federal income tax with the intent that the utility's customers share in the benefits of those credits. Both the Senate and House reports express the clear intent of Congress that these credits be *shared* between the ratepayers and the investors. The Texas Legislature recognized this sharing of benefits of the investment and other tax credits when it enacted PURA and later GURA. Section 4.01(e) of GURA provides:

> In determining the allocation of tax savings derived from application of methods such as liberalized depreciation and amortization and the investment tax credit, the regulatory authority *shall equitably balance the interest of present and future customers and shall apportion the benefits between consumers and the gas utilities accordingly ...* (emphasis added).

The Commission's treatment of Southern Union's investment tax credits correctly implements this legislative mandate. By spreading benefits of the 1971 investment tax credit over the useful life of the property producing the credit, the Commission allows both present and future customers to share benefits, and allows the utility to enjoy cost free capital attributable to the unamortized portion of the credits.

It is clear that the utility included all of the property that produced the tax credits in prior years in its rate base, and sought a return on the total cost of that property including the portion attributable to the investment tax credits paid with funds remitted by the ratepayers. Thus, we agree that the Commission's treatment does no more than to return a portion of the customer's funds to them. Such does not constitute retroactive ratemaking.

■ Appellant's fourth point of error urges that the Commission's allowance for "vacant jobs" violates the statute because it is arbitrary, capricious and contrary to substantial evidence, and that the trial court erred in affirming the Commission's order. The record indicates, without doubt, that there is substantial evidence that the Commission allowed Southern Union's total test year salary expense. However, the utility complains that the Commission's action in removing the unadjusted salary of positions vacant at the end of the test year prevents it from recovering costs of filling these vacant jobs in the future. However, the record clearly demonstrates that the Commission allowed Southern Union's test year salary expense and granted the utility partial adjustments. Appellant sought in its adjustment an additional $339,582 to account for purported changes in salary expense between the end of the test year and December 31, 1983. The Commission accepted $189,820 of this amount, but found that the salary expense Southern Union sought for positions unfilled as of the above date, was too speculative to be regarded as known and measurable. Appellant failed to prove in accordance with § 5.04(b) of GURA, that its proposed adjustment in its entirety was known and measurable. Substantial evidence supports this decision by the Commission because reasonable minds, when considering the evidence as a whole, could have reached the same result. *Railroad Commission v. Continental Bus Systems,* 616 S.W.2d 179 (Tex.1981).

Finally, appellant's fifth point of error contends that the effect of the Commission's action fails to permit recovery of the company's expenses together with a reasonable return on invested capital is a cumulative point. No argument was made in appellant's brief on this point. Appellant apparently is suggesting that if none of their four points discussed above is sufficient to reverse the judgment of the trial

281

court in upholding the Commission's order, that collectively they are sufficient. This point has no merit.

After this appeal was perfected by the gas company, and prior to oral argument, the Commission moved to strike the agency record and dismiss the appeal or affirm because the record was not properly before this Court. Because of our holding in *Purolator Armored v. Railroad Comm'n of Texas*, 662 S.W.2d 700 (Tex.App.1983, no writ), in which we held that the agency record need not be admitted as an exhibit in the trial court, we overrule the motion.

The judgment of the trial court is affirmed.

SHANNON, Chief Justice, concurring.

The Commission filed a motion with this Court pointing out that the administrative record is not properly before the Court. The Commission claimed that the judgment should be affirmed for that reason.

Texas Rev.Civ.Stat.Ann. art. 6252–13a § 19(d)(3) (Supp.1985) provides that the party seeking review of an administrative order has the duty to offer and have admitted the agency record into evidence as an exhibit. *See* dissenting opinion in *Purolator Armored v. Railroad Comm'n of Texas*, 662 S.W.2d 700 (Tex.App.1983, no writ).

On January 17, 1985, the gas company filed with this Court the transcript of the proceedings in the district court, but did not file a statement of facts. On March 21, 1985, some two months after the judgment was signed, the gas company filed with this Court a supplemental transcript containing an order of the district court directing that the administrative record in question be delivered to the Court of Appeals in its original form pursuant to Tex.R.Civ.P. 379. The administrative record was filed with this Court on the same date.

It is plain that the agency record is not properly before this Court because there is nothing to show that the agency record was admitted into evidence by the district court. Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 19(d)(3). Accordingly, this Court may

not evaluate and determine the gas company's contentions on appeal. Because the agency record is not properly here, it is the duty of this Court to affirm the judgment of the district court.