(807 P.2d 167)

.:No. 65,931

GREELEY GAS COMPANY, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*.
CITIZENS' UTILITY RATEPAYERS BOARD, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*.

Opinion filed March 1, 1991.

*James G. Flaherty* and *Richard C. Byrd,* of Anderson, Byrd & Richeson, of Ottawa, for appellant Greeley Gas Company.

*Shari Albrecht,* acting general counsel, and *Robert A. Fox,* assistant general counsel, of State Corporation Commission, for appellee.

*William G. Riggins,* consumer counsel, of Topeka, and *Patricia R. Hackney,* of Lawrence, for intervenor Citizens' Utility Ratepayers Board.

Before ELLIOTT, P.J., LARSON and PIERRON, JJ.

ELLIOTT, J.: In this utility rate case, Greeley Gas Company (Greeley) seeks judicial review of the Kansas Corporation Commission's (KCC) order disallowing the inclusion of state and federal income tax in Greeley's cost of service and requiring Greeley to change its purchase gas adjustment (PGA) tariffs to 80/20 incentive tariffs. Additionally, the Citizens' Utility Ratepayers Board (CURB) has intervened in Greeley's appeal and also filed its own application for judicial review, seeking reversal of the KCC's allowance of social and athletic club dues in Greeley's cost of service.

We affirm in part and reverse in part.

### The Income Tax Issue

Because Greeley has elected subchapter S corporate status, income tax is paid by the shareholders rather than by the corporation itself, which would be the case if Greeley were a C corporation. See 26 U.S.C. §§ 1361-78 (1988).

The KCC and CURB urge that, because Greeley's shareholders pay the taxes on the earnings of the corporation based on a proportionate share of their ownership, Greeley itself had no tax liability. KCC and CURB argue that ratepayers should not be required to pay the shareholders' tax liabilities. See *Monarch Gas Co. v. Commerce Com.,* 51 Ill. App. 3d 892, 366 N.E.2d 945 (1977); *FPC v. United Gas Pipe Line Co.,* 386 U.S. 237, 243-44, 18 L. Ed. 2d 18, 87 S. Ct. 1003 (1967).

Greeley argues that income taxes paid on behalf of the corporation (which apparently was at a rate lower than that for

corporate taxpayers) should be recognized as part of corporate Greeley's cost of service. See K.A.R. 82-1-231(c)(11)(A).

A strong argument can be made favoring Greeley's position. In *Suburban Util. Corp. v. Public Util. Com'n.*, 652 S.W.2d 358 (Tex. 1983), the Texas Supreme Court allowed the taxes paid by shareholders of a subchapter S corporation to be recovered from ratepayers.

The Texas court reasoned that the utility is entitled to a reasonable cost of service allowance for income taxes *actually paid* by the shareholders on the corporate utility's taxable income *or* for the taxes it would be required to pay as a C corporation, whichever is less. 652 S.W.2d at 364. The court simply recognized the realities of the situation: (1) regardless of who paid, the taxes *were* on the income of the utility and were "inescapable business outlays." 652 S.W.2d at 364; and (2) including taxes in cost of service expenses was well established. 652 S.W.2d at 363. And *cf. Moyston v. New Mexico Public Service Commission*, 76 N.M. 146, 412 P.2d 840 (1966) (sole proprietor utility).

The KCC and CURB argue the Texas courts in two later cases have abandoned the position taken in *Suburban.* We disagree. Although the later cases disallowed tax expenses *not actually incurred* by the utility, neither involved a subchapter S corporation or the precise issue presented in the instant case. As we read the cases, *Suburban* is still good law in Texas. See *Public Utility Com'n. v. Houston Lighting*, 748 S.W.2d 439 (Tex. 1987); *Southern Union Gas v. Railroad Com'n of Tex.*, 701 S.W.2d 277 (Tex. App. 1985).

On the other hand, evidence was presented in the present case that to allow Greeley's shareholders' full tax expense in cost of service would result in an after-tax return on equity of 17 to 18%. (The KCC allowed Greeley a rate of return of 14.15%.) Obviously, the KCC must have the discretion to make adjustments, in a proper case, to prevent excess rates of return.

In the instant case, however, Greeley simply did not provide the KCC with substantial competent evidence of what the shareholders' actual income tax liability on Greeley's earnings was. Greeley's expert Richard Treich merely testified that typically the net earnings of a subchapter S corporation are taxed at the shareholders' tax rate of 28%. He admitted, however, that the indi-

vidual tax rate could range from 15 to 33% and further admitted that the 28% rate used in the rate application was just an estimate and that none of the taxpayers' income tax returns had been examined to ascertain what rate was *actually paid.*

In addition, seven of Greeley's shareholders are minors and three shareholders are trusts, facts not considered in the 28% estimate.

Even under the reasoning of *Suburban,* it was Greeley's burden to establish the income taxes actually paid by its shareholders on its behalf.

In the present case, had the KCC recognized the reasoning of *Suburban* and allowed the estimated income tax expense in Greeley's cost of service, it would have, in our opinion, been allowing an expense unsupported by substantial competent evidence.

Based on Greeley's lack of competent evidence to support its position, the KCC's disallowance of the income tax expense is affirmed.

### The PGA 80/20 Incentive Tariffs Issue

The KCC, by imposing the PGA 80/20 incentive tariff, ordered that Greeley can pass through to the ratepayer only 80% of any increase in its gas costs and, likewise, only 80% of any decrease in gas costs.

On this issue, Greeley's primary argument is that the PGA incentive tariff violates the filed rate doctrine:

"The filed rate doctrine ensures that sellers of wholesale power governed by FERC can recover the costs incurred by their payment of just and reasonable FERC-set rates. When FERC sets a rate between a seller of power and a wholesaler-as-buyer, a State may not exercise its undoubted jurisdiction over retail sales to prevent the wholesaler-as-seller from recovering the costs of paying the FERC-approved rate." *Nantahala Power & Light v. Thornburg,* 476 U.S. 953, 970, 90 L. Ed. 2d 943, 106 S. Ct. 2349 (1986).

See *Mississippi Power v. Miss. ex rel. Moore,* 487 U.S. 354, 371-72, 101 L. Ed. 2d 322, 108 S. Ct. 2428 (1988) (FERC has exclusive authority to determine reasonableness of wholesale rates; states cannot bar regulated utilities from passing through to customers the FERC-mandated wholesale rates).

On the other hand, while FERC determines whether a rate is reasonable, state public utility commissions do have the power

to determine whether that rate is reasonably incurred in view of alternative available sources. Thus, in a proper case, the state commission may deem the expense imprudently incurred, even though the utility pays the FERC-mandated rate, without overlapping the regulatory functions of FERC. *Pike Co. Light & Power Co. v. Pa. Puc.*, 77 Pa. Commw. 268, 274-75, 465 A.2d 735 (1983).

Further, since the question of whether the retailer is acting with economic prudence in purcha sing at wholesale is never before FERC, the state commission would not be guilty of regulating the same activity as FERC. *Kentucky West Virginia Gas v. Pa. Public Utility*, 837 F.2d 600, 609 (3d Cir.), *cert. denied* 488 U.S. 941 (1988). The court cautioned, however, that a state could not apply its own laws in such a way as to interfere with the federal regulatory scheme. 837 F.2d at 609.

KCC's reliance on *Kentucky West Virginia* and *Pike* is misplaced. In both of those cases, there was a finding of imprudence for specific purchases of power. In the present case, Laurie Kelly, a managing rate economist employed by the KCC, testified that Greeley's prices on existing purchase contracts were, in fact, reasonable. The result of the KCC's PGA incentive tariff is that, regardless of whether alternative sources are available, and regardless of the prudence or lack of prudence on Greeley's part, and without any finding of imprudence by the KCC, Greeley can *never* recover the FERC-filed rate. In light of the factors presented in this record, we hold the KCC's PGA incentive tariff is violative of the filed rate doctrine.

We need not decide whether an incentive tariff can *ever* be compatible with the filed rate doctrine. Compare *Re Energy Cost Adjustment Clauses*, 41 Pub. Util. Rep. 4th (PUR) 81, 85-86 (1980) (California rejected a 90/10 clause but approved a 98/2 clause); *Re Standard Purchased Gas Adjustment*, 40 Pub. Util. Rep. 4th (PUR) 619, 622 (N.M. 1980) (New Mexico: 90/10 clause is punitive); *Re Consumers Power Co.*, 14 Pub. Util. Rep. 4th (PUR) 370, 410 (Mich. 1976) (Michigan approved a 90/10 adjustment).

We are only holding that under the facts of this case, absent a specific KCC finding of imprudence, the PGA 80/20 incentive tariff violates the filed rate doctrine and must be reversed.

### The Social and Athletic Club Dues Issue

In its application for judicial review, CURB argues the KCC should not have allowed Greeley to pass through to ratepayers social and athletic club dues totaling $1,799. Greeley included in its cost of service dues paid to such organizations as the Denver Country Club, Garden of the Gods Club, and the Ulysses Country Club.

The *only* testimony presented on this issue was by CURB's witness Ellen Blumenthal, who recommended against the allowance, stating that Greeley had made no showing that those social club dues were reasonable or provided any benefit to Kansas ratepayers. No rebuttal testimony nor cross-examination was presented on the issue.

The KCC order mentions the testimony but makes no specific finding or conclusion with respect to CURB's proposed adjustment. By that omission, the dues were included in Greeley's rates. On review, neither the KCC nor Greeley has briefed this issue.

In *Gas Service Co. v. Kansas Corporation Commission*, 8 Kan. App. 2d 545, 662 P.2d 264, *rev. denied* 233 Kan. 1091 (1983), the issue was the propriety of recognizing charitable contributions; the KCC must make findings of unreasonableness for those dues it disallows. 8 Kan. App. 2d at 551.

We need not decide the public policy question of whether a utility may ever recover dues to social and athletic clubs. Because the *only* evidence before the KCC was contrary to the inclusion of the dues, there cannot be substantial competent evidence to support the KCC's inclusion of the dues in Greeley's cost of service. Accordingly, the KCC's inclusion of those dues must be reversed as unreasonable. K.S.A. 77-621(c)(8).

The KCC order is affirmed as to the income tax adjustment, reversed as to the PGA incentive tariff issue, and reversed as to the membership dues issue.