(76 P.3d 1071)

No. 90,726

HOME TELEPHONE COMPANY, INC., *Petitioner/Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Respondent/Appellee.*

Opinion filed September 30, 2003.

*Thomas E. Gleason, Jr.* and *Mark Doty*, of Gleason & Doty, Chartered, of Lawrence, for the appellant.

*John McNish* and *Susan B. Cunningham*, of Kansas Corporation Commission, for the appellee.

Before PIERRON, P.J., JOHNSON and MALONE, JJ.

PIERRON, J.: Home Telephone Company, Inc. (Home) appeals from an order of the Kansas Corporation Commission (Commission) which determined Home's revenue requirement for purposes of establishing appropriate payments to Home from the Kansas Universal Service Fund (KUSF). Home challenges the Commission's refusal to include an imputed income tax expense adjustment into its revenue requirement and the Commission's decision, on reconsideration, to amortize Home's rate case costs over a 6-year period rather than over 5 years. We affirm in part and reverse in part.

Home is a Class B telephone utility having fewer than 20,000 access lines. It is authorized to provide local exchange and exchange access services in specified geographic areas in central Kansas. Home is organized as a Subchapter S corporation and is a subsidiary of Home Enterprises, Inc., which also has nonregulated business operations. Pursuant to K.S.A. 66-2005(b), Home elected to operate under a traditional rate of return regulation under the 1996 Kansas Telecommunications Act (KTA), K.S.A. 66-2001 *et seq.*

In September 2001, the Commission initiated an investigation by its staff (Staff) into Home's costs, revenues, and rates. The purpose of the investigation was to determine Home's actual revenue requirement in order to ascertain the appropriate amount of KUSF payments Home should receive. The Commission ordered Home to provide detailed information, schedules, and testimony to establish Home's costs and revenues. The data to be provided was based on a test year ending December 31, 2000.

During the early stages of the proceeding, Staff and Home vigorously contested a number of issues. There were numerous motions to compel and objections to information requests, as well as numerous motions for reconsideration of nearly every Commission order. Home was not familiar with audits of this kind that have been made necessary by the comparatively new regulatory system now in place.

Following an evidentiary hearing, the Commission issued its initial order on August 7, 2002, setting Home's revenue requirement. The Commission set an interim revenue requirement which excluded any income tax expense adjustment. It found Home had failed to timely produce evidence sufficient to allow an adequate investigation into the claimed expense. However, the Commission directed Staff and Home to work together to determine the correct imputed income tax expense and related adjustments and to submit an agreed order or separate reports to the Commission within 90 days.

During this 90-day period, Staff and Home reached an agreement in principle, but could not resolve differences in language for a stipulation. Accordingly, the parties filed separate reports to the Commission. Home calculated a $107,369 income tax expense adjustment. Staff submitted its own calculations, finding the proper income tax expense to be $74,634. That same day, Home filed a revised report *accepting* Staff's calculations.

On September 27, 2002, the Commission issued an order again rejecting any income tax expense adjustment to Home's revenue requirement. Citing *Greeley Gas Co. v. Kansas Corporation Commission*, 15 Kan. App. 2d 285, 807 P.2d 167 (1991), the Commission found an adjustment could not be made because Home failed

to provide information showing the actual income tax rate or tax liability that was paid by Home's shareholders. The Commission's order also stated that if Home filed for reconsideration of the order, it should include the relevant tax documentation to show the actual tax liability and tax rate for each shareholder.

Home filed a timely petition for reconsideration. Home attached copies of the 2000 tax returns of all but one of the shareholders of Home Enterprises, Inc. The one excluded shareholder held a very small amount of the outstanding shares. Home also attempted to specify the income generated from the telephone operations and used a weighted income tax rate to project the actual tax liability of the shareholders as a group.

On May 2, 2003, the Commission issued its final order denying reconsideration. Home timely filed a petition for judicial review with this court.

The primary issue raised in Home's petition for judicial review challenges the Commission's disallowance of *any* adjustment to its revenue requirement to reflect income tax expense. Home argues the Commission's decision is contrary to law and is arbitrary and capricious.

Determining the appropriate income tax expense adjustment was a significant issue throughout this proceeding. The issue was a complex one due to Home's status as a Subchapter S corporation (S-corp) under the Internal Revenue Code. Home had converted several years before from a Subchapter C corporation (C-corp) to an S-corp. The problem is complex because an S-corp does not pay income taxes; rather, the corporation's net income is passed through to the shareholders, who must include the income on their individual tax returns.

Pursuant to K.S.A. 66-118c, this court's review of an order of the Commission is in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* In its brief, Home contends the Commission acted unlawfully and/or unreasonably and that the Commission's actions were arbitrary and capricious. These claims of error are consistent with the KJRA. See K.S.A. 77-621.

This court has previously held that an order of the Commission is " ' "lawful" if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. [Citation omitted.]' " *Farmland Industries, Inc. v. Kansas Corporation Comm'n,* 24 Kan. App. 2d 172, 175, 943 P.2d 470, *rev. denied* 263 Kan. 885 (1997). A Commission order is considered " ' "reasonable" if it is based on substantial competent evidence. [Citation omitted.]' " 24 Kan. App. 2d at 175.

The starting point in reviewing the Commission's order is the application of *Greeley Gas* in this case. *Greeley Gas* involved the proper treatment of income tax expense in a rate proceeding involving an S-corp utility. In *Greeley Gas,* the Commission held that because Greeley Gas Company itself had no tax liability, the ratepayers should not be required to pay the shareholders' tax liabilities. 15 Kan. App. 2d at 286-88.

On appeal, this court relied on *Suburban Util. Corp. v. Public Util. Com'n.,* 652 S.W.2d 358 (Tex. 1983), in holding that S-corp utilities generally should be allowed to recover income tax expenses in rate cases. 15 Kan. App. 2d at 287. In *Suburban Util. Corp.,* the Texas court held the utility was entitled to an allowance for income taxes actually paid by the shareholders on the utility's taxable income *or* for the taxes it would have been required to pay if it was a C-corp, whichever was less. 652 S.W.2d at 364. This court found this reasoning "simply recognized the realities of the situation: (1) regardless of who paid, the taxes were on the income of the utility and were 'inescapable business outlays.' [Citation omitted.]" 15 Kan. App. 2d at 287.

Although this court held that S-corp utilities generally should be allowed to recover reasonable income tax expenses, we recognized the burden was on the company to provide the required evidence to prove the actual expenses incurred by its shareholders. Finding Greeley had failed to present adequate evidence to establish the alternative calculations, we affirmed the ultimate decision to deny the income tax expense adjustment. 15 Kan. App. 2d at 288.

In its final order in this case, the Commission held that Home was not entitled to an income tax expense adjustment because it failed to present evidence of the second calculation identified in

the *Greeley Gas* case—the amount of actual shareholder income tax liability for the utility. Home asserts the Commission misapplied the principles of *Greeley Gas*. Home argues that it provided substantial evidence, on reconsideration, showing that its shareholders' income taxes substantially exceeded those of a C-corp utility with the same revenues; therefore, the Commission should have allowed the $74,634 in imputed income tax calculated by Staff—and accepted by Home—during the 90-day follow-up period.

Based on the record, we have no qualms with the Commission's determination that Home's calculations and documentation were insufficient to adequately determine its shareholders' actual liability for Home's income tax expenses. The Commission's assertion that an S-corp should keep side books recording relevant information was reasonable. Had the Commission and Staff emphasized the need for the dual calculations of *Greeley Gas* throughout the proceeding, we would find no error in this case.

However, the record established that after *Greeley Gas*, the Commission effectively adopted a different mechanism for determining the appropriate income tax expense adjustment for S-corp utilities. According to Staff, the Commission repeatedly adopted calculations based solely on the C-corp rate, even without detailed evidence of the shareholders' actual income tax liability. Staff repeatedly acknowledged this was the regular practice, both before and after the evidentiary hearings here. Home likewise repeatedly reminded the Commission that its understanding with Staff was that the income tax expense adjustment would be based on C-corp calculations.

Home's original filings calculated its income tax expense adjustment by projecting the income taxes the company would have paid if it was still a C-corp. In April 2002, Home also provided Staff with the 2000 and 2001 IRS Form 1120S for Home Enterprises, Inc., including schedule K-1 forms for its individual shareholders. While there were prehearing disputes about the type of information Home was required to provide on the income tax issue, Staff's motions to compel focused on information necessary to determine an appropriate separations factor and to make appropriate adjustments to accumulated deferred income tax and retained earnings

accounts based on an imputed C-corp tax expense. None of Staff's motions to compel requested any direct information about the actual shareholders' tax returns or actual tax rates.

Based on standard Commission procedures, the parties filed "prefiled" testimony of their witnesses prior to the evidentiary hearings. With respect to the income tax expense calculations, Staff's experts recommended excluding all income tax expenses due to insufficient information to determine Home's C-corp tax liability. In fact, one of Staff's witnesses' testimony was replete with statements that Home's tax calculations needed to be consistent with that of a C-corp. The witness testified the income tax expense should be no higher as a result of the S-corp election than if Home had continued as a C-corp. The witness further acknowledged the Commission's past practice to allow an S-corp utility to recover current income tax expenses at the appropriate C-corp tax rate.

Significantly, there was no mention by Staff's witnesses, either in their direct or rebuttal testimony, that the expense should be denied because of the lack of calculations or documentation as to the actual tax liability of Home's shareholders or that such information was necessary to determine an appropriate income tax expense adjustment. Moreover, the Commissioners did not question any witness during the hearing about the lack of any evidence regarding the actual tax liability of Home's shareholders.

In its testimony, Home's expert agreed Staff had valid points about the need to make various adjustments in order to calculate the appropriate C-corp income tax expense. After Staff's expert's testimony was filed, Home asked its tax preparers to create a pro forma financial schedule to quantify and account for the modifications Staff testified were needed. As a result, Home submitted a revised exhibit attempting to address all of Staff's concerns about the income tax calculations on the first day of the evidentiary hearing. Staff objected because of its lack of opportunity to review the calculations and their underlying data.

In its initial order, the Commission compromised by making the revenue requirement determination, which excluded an income tax expense adjustment, interim. The Commission noted that Home had the burden of producing evidence necessary to conduct the

investigation into its income tax expense. The Commission then stated:

"Therefore, the Commission concludes that Home and Staff should be directed to work together *to obtain and provide necessary information to determine the correct imputed income tax expense and accompanying adjustment to rate base for accumulated deferred income tax for Home* and that the parties should present that correct information to the Commission within 90 days from the date of this Order. If no agreement can be reached, Staff and Home will file separately their recommendations regarding the appropriate tax adjustments. In the interim, Home's KUSF support, effective September 1, 2002, will be based upon a zero imputed income tax expense and related components." (Emphasis added.)

While referencing the *Greeley Gas* case, the Commission's initial order made absolutely no mention of the lack of any evidence as to actual shareholders' tax liability or the Commission's need for such information in order to decide the income tax issue.

Within the 90-day period, Home submitted its tax information and revised calculations to Staff. In addition, Home submitted an information request specifically asking Staff to identify any and all additional information it deemed necessary to evaluate Home's income tax expense and an explanation of any disagreement Staff had with Home's calculations or methodologies in calculating this expense. The Commission denied Home's motion to compel a response to this information request. Instead, it ordered Home and Staff to meet, with their attorneys and experts, to discuss the income tax expense adjustment.

After the ordered meeting, Staff and Home agreed in principle as to an appropriate income tax expense adjustment; however, they could not agree on the language of a stipulation. Home and Staff did file differing reports, but Home quickly acquiesced to Staff's calculations.

Notwithstanding the de facto agreement between Staff and Home, the Commission issued its second order, again rejecting any income tax expense adjustment. For the first time, this order explicitly cited the lack of information in the record showing the actual income tax rate or tax liability that was paid by Home's shareholders. The Commission relied on the *Greeley Gas* case, indicating that it needed sufficient information for both calculations to

allow any income tax expense adjustment. The Commission's order, however, failed to explain why it was no longer following its historical practice of calculating the income tax expense based on the C-corp tax calculations.

Home filed a timely petition for reconsideration of the second order. Home attached copies of the 2000 individual tax returns of all but one of the shareholders of Home Enterprises, Inc. In addition, in the short 18-day period allowed for petitions for reconsideration, Home attempted to specify the income generated from the telephone subsidiary and used a weighted income tax rate to project the actual tax liability of the shareholders as a group. Although acknowledging its prior agreement to use the C-corp tax calculations only, Staff argued Home's new information did not adequately establish the shareholders' actual tax liability for the utility's operations.

The Commission's final order denied the adjustment, holding that Home's calculations of the actual shareholders' liability were inadequate because they were based on tax returns containing aggregated information of Home Enterprises, Inc., not just Home, its telephone subsidiary. The Commission also expressed concern about the unknown impact on tax rates because some of the shareholders were trusts.

The final order also, for the first time, expressed another concern—whether the change to an S-corp increased the net benefits to the corporation, which should be equitably shared between ratepayers and shareholders. Noting that Home never sought its approval of the change from C-corp to S-corp status, the Commission expressed concern that it could not calculate the full economic effect of the corporate change. The Commission presumed the change in corporate status benefitted Home and its shareholders and needed to be taken into account. Based on all these factors, the Commission denied further reconsideration.

There is no doubt the handling of the income tax issue in this audit was unnecessarily complicated by the parties. Home objected to many of the data requests issued by Staff seeking information about its revenues and information relevant to income taxes. These disputes delayed the disclosure of information and Staff's ability to

respond and address the issue. In addition, Home's evidence regarding its income tax calculations changed throughout the proceeding. However, it is clear Home's changing calculations were aimed at accommodating the objections Staff's experts had to the company's calculations.

However, Home does not bear the sole responsibility for the problems in addressing this issue. Both the Commission and Staff also made this issue unnecessarily complicated because their standards created a moving target for the company. Staff initially agreed to follow the historically used methodology of determining expenses on a C-corp basis, and the parties' evidence at the hearings was limited to use of this methodology. During the hearing, no indication was given by Staff or the Commission that the absence of information about actual shareholders' taxes was an impediment to obtaining the income tax expense adjustment. Moreover, the Commission's initial order setting an interim revenue requirement directed the parties to work together to determine the correct *imputed* tax expense and made no mention of the lack of or need for evidence of the *actual* shareholders' tax liability.

It is abundantly clear to this court that the Commission initially adopted its historical practice of limiting the income tax issue to a determination of the appropriate C-corp tax calculations. At no time during the prehearing proceeding, the evidentiary hearing, or in its initial order did the Commission inform the parties of a change of direction.

Based on the initial order, the parties attempted to resolve the income tax issue. The Commission denied Home's information request seeking clarification of what more it needed to do to meet Staff's concerns. Staff and Home met and essentially agreed on their calculations. Although different reports were filed, Home immediately adopted Staff's final calculations. This de facto agreement apparently provided substantial competent evidence, in the Commission's view, of an appropriate C-corp imputed tax expense figure. The Commission took no issue with those calculations. Instead, the Commission rejected the income tax expense on new grounds—the failure to establish Home's actual shareholders' tax liability.

We will not speculate why the Commission saw fit, in its second order, to suddenly revive the second prong of *Greeley Gas*. The effect of the second order, however, was to suddenly create a new standard that Home was required to meet after the evidentiary hearings had closed. Moreover, by explicitly raising this issue for the first time in its second order, the Commission limited Home's ability to produce new evidence and calculations to the 18-day timeline provided for petitions for reconsideration. See K.S.A. 66-118b; K.S.A. 2002 Supp. 77-529(a)(1); K.A.R. 82-1-217.

Based on the clear record before us, we find the Commission acted arbitrarily and capriciously in refusing to adopt the undisputed C-corp income tax expense. The C-corp figure apparently was less than the taxes paid by the shareholders in the S-corp framework. The initial order and second order clearly applied different standards as to what Home needed to establish to be entitled to an income tax expense adjustment. Our finding that the Commission's orders created a moving target is reinforced by the Commission's final order. While the Commission found Home's new calculations inadequate, the final order is primarily focused, again, on an entirely new standard—requiring Home to establish whether the change from a C-corp to an S-corp generated other unspecified benefits that should be shared with the ratepayers. This standard was not mentioned as relevant in either of the two prior orders. This is a clear example of arbitrary action by an governmental agency.

The appellate courts have applied many different standards in defining "arbitrary" and "capricious" in the context of the review of administrative action. An agency's action is arbitrary and capricious if it is unreasonable or without foundation in fact or is not supported by substantial evidence. *Davenport Pasture, L.P. v. Board of Morris County Comm'rs*, 31 Kan. App. 2d 217, 223, 62 P.3d 699 (2003). " 'Arbitrary' also has been said to mean that an action has been taken without adequate determining principles, not done or acting according to reason or judgment; 'oppressive' as harsh, rigorous, or severe; and 'capricious' as changing, apparently without regard to any laws." *Dillon Stores v. Board of Sedgwick County Comm'rs*, 259 Kan. 295, Syl. ¶ 3, 912 P.2d 170 (1996).

The Commission abandoned its practice of adopting C-corp tax calculations in its second order. Generally, administrative agencies may change positions on an issue if the new position is supported by substantial competent evidence. However, our courts also have recognized that when an administrative agency deviates from a policy it had adopted earlier, it must explain the basis for the change. *Western Resources, Inc. v. State Corporation Comm'n*, 30 Kan. App. 2d 348, Syl. ¶ 7, 42 P.3d 162, *rev. denied* 274 Kan. 1119 (2002). Here, the Commission was not obligated to follow its established procedure of only considering the C-corp tax calculations. However, the Commission was obligated to advise Home and Staff in the hearing or even in its initial order of this change and what standards the Commission would apply to make its determination. In addition, if the standards changed, Home was entitled to a reasonable amount of time to collect the information necessary to meet those standards.

In oral arguments, the Staff's attorney asserted that its reference to "imputed" income taxes in its initial order was intended to refer to both prongs of the *Greeley Gas* test and Home should have known the Commission needed both calculations to make its determination. Regardless of the claimed intent, we find the Commission's order utterly failed to make clear what the Commission now claims to be necessary to establish the adjustment at issue. Mere reference to the *Greeley Gas* case is insufficient to make clear that Staff's and Home's sole focus on C-corp tax liability was not enough. It is clear from Staff's and Home's subsequent conduct that they, too, failed to interpret the Commission's order to require both calculations. Notwithstanding the Commission's claims of its intent in drafting the order, an administrative agency cannot expect either this court or the parties to be mind readers.

Not only must an agency's decreed result be within the scope of its lawful authority, but also the process by which it reaches that result must be logical and rational. *Allentown Mack Sales Service, Inc. v. NLRB*, 522 U.S. 359, 374, 139 L. Ed. 2d 797, 118 S. Ct. 818 (1998). As emphasized by the Supreme Court:

"Reasoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite. The evil of

a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel (notably ALJ's), and effective review of the law by the courts." 522 U.S. at 375.

Based upon the record, we find the Commission should be bound by its initial standard—Home was entitled to an income tax expense adjustment based on appropriate C-corp calculations. Staff and Home effectively agreed to the appropriate calculations, and the Commission ultimately accepted those calculations. It was arbitrary and capricious for the Commission to reject the adjustment based on its subsequent decision to revive the second prong of *Greeley Gas* after the close of the evidentiary record. Accordingly, we vacate that portion of the Commission's order and remand with directions for the Commission to adjust Home's revenue requirement to reflect the agreed C-corp income tax calculation—$74,634.

Home also challenges the Commission's final order which allowed Home to claim additional rate case expenses for its costs in addressing the lingering income tax expense issue during the post-revenue requirement period. Although the Commission allowed these additional expenses, it changed the amortization period over which Home could collect these expenses from 5 years to 6 years.

In its initial order, the Commission adopted Staff's recommended 5-year amortization period for rate case expenses. The Commission specifically found that Home had failed to "provide any rational basis for [its] proposed three-year period." In addition, the Commission noted that the last intrastate rate case filed by Home had occurred more than 20 years before. Subsequently, the Commission accepted Staff's recommended level of rate case expenses and allowed Home to recover $10,952 annually over a 5-year amortization period.

Home sought clarification or reconsideration of this order, suggesting that it was continuing to incur expenses in complying with the Commission's orders addressing the ongoing income tax expense issue. The Commission denied this request, noting there had to be a cut-off date for recovery of rate case expenses and that the

on-going expenses were directly due to Home's unjustified failure to provide the necessary information during the initial proceeding.

Thereafter, the Commission issued its second order, again denying Home's requested income tax expense. While reconsideration was pending on that order, Home filed a motion for allowance of additional rate case expenses. The company requested recovery of additional expenses associated with the ongoing income tax issue.

In its final order, the Commission found that the circumstances of the case required "special consideration" with respect to rate case expenses. Despite expressed reservations, the Commission accepted the documentation for additional expenses. In balancing the interests of the company and ratepayers, however, the Commission changed the amortization period from 5 to 6 years. On appeal, Home takes issue with the final part of this order.

Home asserts the Commission's decision to amortize Home's rate case expenses over 6 years is not supported by substantial competent evidence in light of the witnesses' testimony which recommended amortization periods of 3 or 5 years. The standard of review is whether there was substantial competent evidence to support the Commission's order granting Home additional rate case expenses, but ordering those expenses to be recovered over a longer period of time. "Substantial evidence" is evidence which is both relevant and has substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 783, 958 P.2d 637 (1998).

Rate case expenses are typically amortized for a period reflecting the frequency of rate case filings. One of Staff's witnesses opined that KUSF audits would most likely occur approximately every 5 years. Moreover, a 5-year amortization period had been used in other KUSF audits of rural telephone companies. However, the record also established that prior to the current audit, Home had not undergone an intrastate rate proceeding for 20 years. The witness' testimony about the frequency of KUSF audits was necessarily somewhat speculative. We must acknowledge that KUSF audits are proceedings only recently created by the Commission and

that the Commission is only in the first round of auditing local exchange carriers for KUSF purposes.

As another panel of this court recently noted the general rule is that prudently incurred rate case expenses are among the reasonably necessary expenses that public utilities are entitled to recover in a rate-making proceeding. *Columbus Telephone Co. v. Kansas Corporation Comm'n*, 31 Kan. App. 2d 828, 835, 75 P.3d 257 (2003). That panel also acknowledged the Commission was within its authority to establish a cut-off date—the order determining a company's revenue requirement—after which expenses would no longer be treated as "rate case" expenses. 31 Kan. App. 2d at 835-36.

After Home invoked the Commission's discretion to allow additional rate case expenses for ongoing work after the revenue requirement order was issued—the Commission's standard cut-off date—the Commission recognized the special circumstances the case involved and allowed the additional expenses. The Commission is obligated to consider competing policies regarding what expenses should be considered in rate-making decisions, including what amounts should be considered rate case expenses. Rate case expenditures involve some degree of management choice and discretion whether to incur the expenses. *Citizens Utility Board v. ICC*, 166 Ill. 2d 111, 129-30, 651 N.E.2d 1089 (1995). These additional expenses were allowed even though the Commission found on several occasions that Home's continuous objections to disclosing information bordered on abuse of the discovery process and caused the delay in the proceedings.

Under the circumstances, the Commission's determination to extend the recovery period by 1 year for rate case expenses *in this case* was not so arbitrary to be outside the zone of reasonableness. See *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 172, 195, 943 P.2d 470, *rev. denied* 263 Kan. 885 (1997) (in fixing a rate within the zone of reasonableness, the Commission must apply a balancing test considering the interests of all concerned parties). We affirm the Commission's order on this issue.

In summary, we find the Commission's decision denying Home an income tax expense adjustment in its revenue requirement un-

der the circumstances of this case was not reasonable. A regulatory agency's decision must be the result of a process that is logical and fair. We remand this issue and direct the Commission to enter an order amending Home's revenue requirement to include the $74,634 income tax expense calculated by Staff and accepted by Home. We affirm the Commission's order with respect to Home's rate case expenses.

Affirmed in part, reversed in part, and remanded with directions.