(284 P.3d 348)
No. 107,897

CITIZENS' UTILITY RATEPAYER BOARD, *Petitioner/Appellant,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Respondent/Appellee,* and KANSAS CITY POWER & LIGHT CO., *Intervenor.*

Opinion filed July 27, 2012.

*C. Steven Rarrick*, of Citizens' Utility Ratepayer Board, of Topeka, for petitioner/appellant.

*Dana A. Bradbury* and *Brian G. Fedotin*, of Kansas Corporation Commission, for respondent/appellee.

*Frank A. Caro, Jr.* and *Anne E. Callenbach*, of Polsinelli Shughart PC, of Overland Park, and *Denise M. Buffington*, of Kansas City, Missouri, for intervenor Kansas City Power & Light Co.

Before HILL, P.J., MALONE and BRUNS, JJ.

HILL, J.:

## INTRODUCTION

This is an appeal from the order of the Kansas Corporation Commission, referred to as the Commission in this opinion, granting the inclusion of $4.5 million for consultant and attorney fees as rate case expenses for Kansas City Power and Light Company, commonly called KCP&L, a public utility regulated by the Commission.

In 2005, KCP&L agreed with the Commission and its staff (Staff), along with other interested parties, to provide for the future energy needs of Kansas energy users by making substantial improvements in the company's capacity to generate and transmit

electricity. The parties refer to this agreement as the Plan. When the agreement was made, the parties recognized that KCP&L needed to "make substantial investments in its electric infrastructure over a five-year period" to meet the projected future energy demands of its customers in an environmentally friendly way. This meant that the company would make major improvements to its generating station at Iatan I in Missouri and construct a new coal-fired plant called Iatan II at the same location. The Plan contemplated that KCP&L would recover the costs of its investments through a four-step rate increase application process. The rate application that is the subject of this lawsuit is the fourth and last of that series of applications.

The Citizens' Utility Ratepayer Board, known by its acronym CURB, is a watchdog group formed by the legislature to represent the interests of residential and small commercial ratepayers in such proceedings. See K.S.A. 66-1222(a). CURB entered its appearance in the rate case and made it known that it opposed granting KCP&L any money in excess of $2.1 million for rate case expenses, the amount initially claimed by KCP&L.

In due course, the Commission approved $4.5 million in rate case expenses to KCP&L. Both CURB and KCP&L asked the Commission to reconsider its award. CURB contended that the approved amount was too high, while KCP&L thought the amount was too low. After taking additional evidence and entertaining argument on the matter, the Commission once again approved $4.5 million to KCP&L for rate case expenses.

CURB now appeals that award, seeking our review under the Kansas Judicial Review Act, starting at K.S.A. 77-601. CURB attacks the rate case award on three fronts, claiming: (1) The award is not supported by substantial competent evidence when viewed in the light of the record as a whole; (2) the award is unreasonable, arbitrary, and capricious; and (3) the award results in an erroneous interpretation or application of the law.

The Commission appears in defense of its rulings and KCP&L intervenes in support of the Commission's award.

Given the standard of review and the extensive legislative power of the Commission to set utility rates in Kansas, our review of this

administrative record reveals no good reason to overturn or modify it in any way. Indeed, the Commission did not roll over and play dead here but instead, vigorously challenged KCP&L to prove the necessity and reasonableness of its expenses. We begin by giving a brief history of the events leading up to this controversy. In our view, CURB tries, unreasonably, to restrict the Commission. Using the Commission's own findings that explain why it quit analyzing billing statements for want of detail and used a lodestar calculation instead, CURB unsuccessfully contends the Commission could not award a sum for expenses that was greater than the original estimate.

*Prior rate proceedings led to this lawsuit.*

Citing K.S.A. 66-117, KCP&L filed an application with the Commission in December 2009 seeking to change its rates for electricity provided to Kansas consumers. KCP&L requested an 11.5 percent increase in its rates to cover a claimed gross revenue deficiency of over $55 million dollars for a test year ending September 30, 2009.

The December 2009 rate application, found at Commission Docket No. 10-KCPE-415-RTS (called the 415 docket by the parties), was the fourth in a series of rate cases anticipated as part of a regulatory plan for KCP&L adopted by the Commission in 2004. That plan was part of a stipulation and agreement entered into by KCP&L, Staff, CURB, and other interested parties. (Docket No. 04-KCPE-1025-GIE). We note the parties settled the first three rate cases in 2006, 2007, and 2009.

As a part of the settlement in the third rate case, the parties agreed that certain issues would be raised in a later docket. Those issues addressed the prudence of certain upgrade costs of KCP&L's Iatan I electrical generating facility and other Iatan common plan improvements. The parties needed to resolve how much of those costs would be included in KCP&L's rate base. As that docket progressed, other parties also asserted that KCP&L imprudently incurred substantial costs in building the Iatan II facility and those imprudent costs should be excluded from KCP&L's rate base.

After approving a partial settlement, the Commission held evidentiary hearings on KCP&L's rate application from August through September 2010 to resolve any remaining issues. With respect to the Iatan II construction and improvements, the Commission reviewed prefiled testimony and heard the cross-examination of Walter Drabinski, Staff's expert witness. It was Drabinski's opinion that KCP&L had been imprudent in many of its decisions made during the construction of Iatan II and certain environmental upgrades installed at Iatan I. Drabinski recommended that a substantial part of the construction costs be excluded from KCP&L's rate base. The Commission also considered the prefiled testimony and cross-examination of at least six witnesses presented by KCP&L to challenge Drabinski's opinions about the imprudence of KCP&L's actions.

In its initial rate case application, KCP&L requested $2.1 million in rate case expenses to be included in its operating expenses. CURB objected later at the evidentiary hearings to any amount of increase in rate case expenses in excess of that requested in the application. CURB asserted that if any additional rate expense was being claimed, CURB had a right to examine the evidence supporting any increase and oppose it. During testimony, CURB's expert witness gave the opinion that the original amount of rate case expenses requested was reasonable due to the complexity of the case. However, she testified that if the amount finally requested exceeded the original figure, CURB would not say the larger amount was reasonable. She emphasized the high number of attorneys KCP&L had working on the case and the high hourly rates of those attorneys. The witness offered that some states "have a 50/50 rate case sharing routinely" between the shareholders and rate payers.

Then, in posthearing responses to discovery requests (called data requests in the vernacular of rate cases) KCP&L asserted that rate case expenses for this docket exceeded $8.3 million dollars. This total included $1,169,712 for estimated costs incurred by the Commission and CURB, and $7,149,711 in costs incurred by KCP&L.

*The initial Commission order and subsequent petitions for reconsideration.*

The Commission issued its initial rate case order on November 22, 2010. It addressed several issues, including prudence in the construction of the Iatan II facilities' rate of return, operating expense issues dealing with maintenance, employee incentive and pension programs, depreciation rates, and rate case expenses. The Commission also addressed issues relating to the cost of service to different customer classes, rate design, and tariff issues. The Commission's final decision authorized a $21,846,202 revenue increase. In reaching this result, the Commission specifically rejected *in toto* Staff's claim that significant costs incurred by KCP&L during construction of Iatan II should be excluded from KCP&L's rate base. The Commission did reduce the requested rate base increase in the Kansas jurisdiction by slightly over $5 million based upon KCP&L's own expert's testimony regarding imprudent costs.

At this point, the Commission faced the dispute between CURB and KCP&L about rate case expenses. Although CURB had opposed any rate case expenses in excess of $2.1 million, KCP&L had failed to include any detailed information in the record describing the services rendered or time spent by KCP&L's attorneys, consultants, and experts in the case. Consequently, the Commission reviewed KCP&L's responses to data requests filed after the hearings. The Commission found the information and the responses prevented individualized review of charges. Therefore, the Commission used its own expertise in reviewing rate case expenses to determine what amount was a just and reasonable amount to include in rates for this particular case.

Given the lack of detailed information and the looming statutory deadline requiring a decision, the Commission decided to allow $4.5 million in rate case expenses and determined this amount would be granted as interim rate relief. If any party contested the rate case expenses, the Commission stated it would open a separate docket to allow parties to challenge the rate case expenses. The Commission reached the $4.5 million figure for utility-only rate case expenses, noting that the Commission's and CURB's costs

would be added to that figure for total rate case costs. The Commission found this amount balanced the interests of all concerned parties and was based upon its knowledge and experience in determining reasonable rate case expenses. The Commission's order set forth general considerations regarding the helpfulness of KCP&L's various witnesses and consultants, the large number of attorneys working on the case, and the possible errors in invoices. The Commission specifically identified some entities and costs as being excluded from its calculations.

In response to the Commission's order, several parties filed timely petitions for reconsideration or clarification. As a result, on January 6, 2011, the Commission entered its order on the various motions for reconsideration. The Commission modified its original order through a nunc pro tunc order and also clarified various provisions. The Commission modified its prior decision after concluding that rate case expenses should not be granted as interim rate relief and decided the amount set would be a final order. The Commission ordered Staff to file the data requests and KCP&L's responses detailing rate case expenses as part of the hearing record. Commenting that the evidence in the record was meager, the Commission found that the $4.5 million in utility-only rate case expenses was supported and would be allowed in determining KCP&L's rates.

This order spawned additional motions for reconsideration and motions for clarification by CURB and KCP&L. It was at this time that two petitions for judicial review were filed in this court. Those cases were later dismissed after the court concluded both appeals were prematurely filed as they attempted to review an agency action that was not final.

*The Commission issues the final order setting rate case expenses.*

On February 2, 2011, the Commission granted both parties' petitions for reconsideration and ordered that another evidentiary hearing be held for the presentation of witnesses and evidence relating to the rate case expenses. The Commission advised the parties that it would consider the eight factors set forth in Kansas Rules of Professional Conduct 1.5(a) (2011 Kan. Ct. R. Annot. 470)

with respect to reasonableness of attorneys fees in the case and it would also rely on those factors as a guide when evaluating expenses for nonattorney consultants. The Commission limited the participants in this new evidentiary proceeding to KCP&L and CURB, the only parties taking issue with rate case expenses. The Commission directed Staff, however, to aid the Commission in evaluating the evidence presented by KCP&L and CURB. Finally, the Commission held that rate case expenses would be limited to expenses incurred through November 22, 2010.

The Commission received prefiled testimony and conducted the examination of witnesses at evidentiary hearings held September 6-8, 2011. This testimony revealed that KCP&L's witnesses asserted that KCP&L had incurred approximately $9.1 million in rate case expenses. About $1.4 million of this expense was incurred by Staff and CURB, resulting in $7.7 million in utility-only rate case expenses. KCP&L's representatives testified that approximately 70 percent of these costs were incurred in order to address the prudence issues concerning Iatan II.

For its part, KCP&L provided a summary of monthly invoices for its individual vendors and their timekeepers. Then KCP&L allocated the time spent to broad categories, such as prefiling, application preparation, discovery, hearing, and posthearing activities. KCP&L admitted its summary exhibits did not contain the information required by a presiding officer's report, but they had a CD containing the level of detail required. That CD containing the work papers was ultimately admitted as KCP&L exhibit 2 over CURB's objection. The CD is in the appellate record and contains copies of invoices from various law firms and consultants with timekeeper information. One of Staff's witnesses determined that except for a few vendors, the testimony and work papers contained all three levels of information previously requested by the Commission.

On the other hand, CURB presented testimony of witnesses challenging KCP&L's claimed rate case expenses. One witness suggested that the Commission should institute a policy requiring ½ of the utility-only rate case expenses be borne by shareholders. She also suggested that in order to level the playing field, the utility's

rate case expenses should be limited to twice the total cost incurred by the Commission and CURB. In the alternative, CURB presented a witness that reviewed KCP&L's vendors' and attorneys' bills and recommended that they be adjusted for duplication, nonjurisdictional work, and other factors. This witness' calculation found that $4.912 million was a reasonable total for rate case expenses. By removing the costs incurred by the Commission and CURB, the utility-only rate case expenses would amount to $3.489 million based on this testimony.

Following this hearing, the Commission issued its order on January 18, 2012. The Commission granted KCP&L rate case expenses of about $1.4 million for Staff and CURB's expenses. Finding that KCP&L failed to prove its management prudently incurred all the rate case expenses requested, the Commission limited the company's own rate case expenses to $4.5 million. The Commission's order indicated that its decision was based on the record as a whole, including the 2010 evidentiary hearing, and its members drew on their expertise as an administrative agency and the individual commissioners' knowledge and experience as attorneys.

The Commission did note that the information submitted by KCP&L lacked the detail desired to calculate rate case expenses, and it specifically questioned the block billing practices of the attorneys and consultants. The Commission found that the format of the information submitted made it impossible, problematic, and tedious to analyze the billings to determine if the work was competently performed, was duplicative, or was relevant to the rate case. The Commission decided that KCP&L had exercised little or no control to keep its rate case expenses within the initial $2.1 million it estimated in its application and deemed KCP&L's witness testimony to the contrary "a sign of indifference."

The Commission stated that the number of timekeepers involved in this particular case was remarkable. We note this includes 47 attorneys, consultants, and paralegals from six different law firms billing over 16,000 hours. In addition, KCP&L used eight consulting firms with 46 different timekeepers billing more than 9,700 hours. The size of the expenditures shocked the conscience of the Commission. The Commission expressed reservation that

every attorney's hourly rate increased during the pendency of the case, even during a time of serious national recession. The Commission also emphasized that in the last litigated case before it, the resulting rate case expense allotment totaled about 5.4 percent of the company's revenue increase. Under that ratio, KCP&L's rate case expenses would be about $1.2 million.

At this time the Commission chose to perform a lodestar calculation. After deciding what reasonable number of hours should be included and then multiplying that number by a reasonable hourly rate, an award can be determined. In this case, the Commission decided upon a range of hourly rates because some lawyers deserved a higher return based upon their skill, experience, and learning.

In the end, the Commission assessed KCP&L with costs incurred by the Commission, Staff, and CURB for $1,422,832, with total rate case expenses of $5,922,832, and directed the expenses be amortized over 4 years. The Commission repeated that although it had not specifically addressed the expenses submitted by each timekeeper, its final ruling was based upon the entire record.

*CURB once again asks for reconsideration.*

After receiving the Commission's order, CURB filed a petition for reconsideration and once again asserted that KCP&L should be limited to rate case expenses of $2.1 million as it requested in its original application, due to its failure to provide the required detailed information. CURB also asserted KCP&L's expenses should be limited because of billing errors, duplicity of work, and excessive charges. Citing the Commission's own opinion, CURB asserted there was no substantial competent evidence to support the $4.5 million rate case expenses allowed, and it argued that an award based on the incomprehensible time records was arbitrary and capricious. Only Staff filed a response to CURB's petition. KCP&L did not respond.

In due course, the Commission denied CURB's petition for reconsideration and upheld its January 2012 order allowing KCP&L $5.9 million in rate case expenses$4.5 million for its own costs and

the balance covering the costs for CURB, the Commission, and Staff. CURB then filed a petition for judicial review with this court.

*A brief review of the law.*

At this point, it is helpful to make some general observations so a proper perspective of the issues raised in this case can be achieved. To say the task of the Commission in deciding rate cases is complex is an understatement. These cases are huge and involve many learned disciplines such as electrical engineering, physics, and economics. Topics such as the applicability of federal rules and regulations, tax implications, as well as the application of its own rules and regulations are areas of concern for the Commission when making these decisions. Many dozens of witnesses can testify, yielding hundreds of thousands of pages of testimony that must all be considered and balanced.

A significant case dealing with this area of the law is *Kansas Gas & Electric Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 720 P.2d 1063 (1986). In that rate case appeal, our Kansas Supreme Court said:

"An important question to be considered is what a regulatory agency should seek to accomplish in such a case. The leading cases in this area clearly indicate that the goal should be a rate fixed within the 'zone of reasonableness' after the application of a balancing test in which the interests of all concerned parties are considered. In rate-making cases, the parties whose interests must be considered and balanced are these:
(1) The utility's investors vs. the ratepayers;
(2) the present ratepayers vs. the future ratepayers; and
(3) the public interest." 239 Kan. at 488.

Even before that case, the Supreme Court had dealt with the concept of "zone of reasonableness" in *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, 386 P.2d 515 (1963). The court stated:

"There is an elusive range of reasonableness in calculating a fair rate of return. A court can only concern itself with the question as to whether a rate is so unreasonably low or so unreasonably high as to be unlawful. The in-between point, where the rate is most fair to the utility and its customers, is a matter for the State Corporation Commission's determination." 192 Kan. 39, Syl. ¶ 17.

Obviously, we are dealing here with such an in-between point.

Further, rate making is more than a mere act of discretion by a state agency; it is a part of the legislative function. Again, referring to *Kansas Gas & Electric Co.*, the court held:

"Under the constitutional separation of powers doctrine, the regulation of public utilities is legislative in nature. The legislators created the Kansas Corporation Commission and granted it full and exclusive authority and jurisdiction to supervise, control, and regulate the public utilities of this state and, when acting in the exercise of its delegated powers, the Commission is not a quasi-judicial body. [Citations omitted.]

"Thus, public utility rate making is a legislative function, whether it is regulated by an administrative body or by the legislature itself." 239 Kan. at 491.

But that does not mean the authority of the Commission is unbridled. The *Kansas Gas and Electric* court also held:

"The KCC's expertise in the field is vast and the Commission must, of necessity, have considerable discretion in order to regulate utilities in the public interest. The statutes also contain a protection against arbitrary action by the KCC. The KCC is required to state expressly its findings of fact and conclusions of law. Such a provision prevents arbitrary action and facilitates judicial review, thus insuring a lawful exercise of legislative authority." 239 Kan. at 495.

*Our Standard of Review.*

According to K.S.A. 2011 Supp. 66-118c, this court's review of an order of the Commission must be in accordance with the Kansas Judicial Review Act, which begins at K.S.A. 2011 Supp. 77-601. On appeal, the Commission's findings are presumed valid, and its order may only be set aside if it is unlawful, is not supported by substantial competent evidence, or is otherwise unreasonable, arbitrary, or capricious. *Western Resources, Inc. v. Kansas Corporation Comm'n*, 30 Kan. App. 2d 348, 351, 42 P.3d 162, *rev. denied* 274 Kan. 1119 (2002). The party challenging the legality of the Commission's order bears the burden of proof pursuant to K.S.A. 2011 Supp. 77-621(a)(1). *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 28 Kan. App. 2d 313, 315, 16 P.3d 319 (2000), *rev. denied* 271 Kan. 1035 (2001). We now follow the 2009 amendments to the Judicial Review Act. See *Rausch v. Sears Roebuck & Co.*, 46 Kan. App. 2d 338, Syl. ¶ 2, 263 P.3d 194 (2011).

*We examine this order to see if it is lawful, reasonable, or arbitrary and capricious.*

An order of the Commission is lawful if it is " 'within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order.' [Citation omitted.]" *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 172, 175, 943 P.2d 470, *rev. denied* 263 Kan. 885 (1997). An order is considered reasonable if it is supported by substantial competent evidence. *Farmland Industries, Inc.*, 24 Kan. App. 2d at 175. The Commission's action is arbitrary and capricious if it is unreasonable or without foundation in fact. See *Farmland Industries, Inc. v. Kansas Corp. Comm'n*, 25 Kan App. 2d 849, 852, 971 P.2d 1213 (1999).

Once testimony is admitted in a rate case, the Commission has discretion to weigh and accept or reject that testimony. On appeal, the court may not substitute its judgment for that of the Commission even though there may be conflicting evidence in the record that would support a contrary result. *Western Resources, Inc.*, 30 Kan. App. 2d 348, Syl. ¶ 2. Further, we recognize that the Commission's decisions "involve complex problems of policy, accounting, economics, and other special knowledge." 30 Kan. App. 2d at 352. The Commission has experienced staff with backgrounds in statistics, accounting, and engineering, which appellate courts lack. *Kansas Gas & Electric Co.*, 239 Kan. at 496.

We may reverse or nullify a Commission order only when the decision is " 'so wide of the mark as to be outside the realm of fair debate.' " *Williams Natural Gas Co. v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 326, 335, 916 P.2d 52, *rev. denied* 260 Kan. 1002 (1996).

*Analysis of issues raised/CURB.*

CURB's argument in the three issues it frames is essentially the same in each but rephrased to fit the three avenues of attack afforded it by the Judicial Review Act. That is to say, CURB contends the Commission's order is not supported by substantial evidence; the order is arbitrary and capricious; and the Commission misinterpreted or misapplied the law. But in support of its position,

CURB uses the severe language the Commission employed in condemning the lack of management of these rate case expenses by KCP&L to bolster its position that these expenses must be capped at $2.1 million, the amount of KCP&L's original estimate. We will examine CURB's contentions beginning with the issue of substantial evidence, followed by our determination of whether the Commission's order is arbitrary or capricious. After that, we will determine if the Commission misinterpreted the law.

*The size of the task.*

There is no doubt that the issue of the prudence of building Iatan II was of the utmost importance to KCP&L. After all, the company had invested $2.1 billion to construct this power plant. The administrative hearing dealing with this issue and others spanned 14 days in August and September 2010. The record of those proceedings fills 130 volumes (taking up 10 boxes). This was a point that KCP&L did not want to lose.

Even CURB's expert witness at the hearings on the rate case expenses, after examining the billings and other issues, offered the opinion that $4.912 million was a reasonable amount for rate case expenses. Deducting the expenses of the Commission and CURB from this amount yields $3.489 million for KCP&L, well above CURB's argument to us that $2.1 million was the cap for KCP&L's rate case expenses.

K.S.A. 66-101b charges the Commission with the task of deciding if rate case expenses were prudently incurred and preventing imprudent costs from being passed on to the ratepayer. The Commission approached this task with gusto.

*Evidence supporting the order.*

At first the Commission examined the billings closely. The block billing practices used by some of the law firms and other consultants frustrated this process. Billings from 47 timekeepers (including attorneys, paralegals, and consultants) associated with six law firms totaled 16,407 hours. The prehearing officer appointed by the Commission sought information about the hourly rates, the number of hours worked, when the work was done, and a description of the work done for each timekeeper. Given the lack of de-

tailed information it received, the Commission then switched methods to a lodestar calculation. At this point, KCP&L sought $9.1 million for rate case expenses (including a sum for the Commission and CURB).

A lodestar calculation requires the decision maker, like a court or an agency, to determine a reasonable number of billable hours and then multiply that number by a reasonable hourly rate for the work performed. The product of this calculation is the fee awarded. It is important to note that the eight factors found in KRPC 1.5(a) are used as a method to determine the reasonableness of the hours requested. *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 204-06, 235 P.3d 515 (2010).

The Commission had before it the evidence of all of the bills. Even though there was not a great amount of detail in them, they did supply some important information. The Commission also took testimony on the role each attorney and law firm played in this case for the company. The Commission also heard testimony about the work of each expert consultant.

From all of this evidence the Commission was able to disallow the total charges of three of the six law firms employed by KCP&L. Then, searching through the evidence, the Commission reduced the number of hours by adjusting for lost time, duplication of services, and time for "getting up to speed"; that is, time to become familiar with the case or the law of the case. Finally, the Commission decided to reduce the number of hours allowed, to account for the law firms' failure to perform billing adjustments and for billing errors. At the end, the Commission decided to use 7,909 hours in its lodestar calculation.

CURB disputes none of this evidence but merely maintains nothing more than $2.1 million should be allowed because the Commission said it was impossible to determine a more exact figure due to the lack of detail in the bills. CURB may be missing the point here. The lack of detail in the bills made it impossible to grant the full amount requested by KCP&L. The lack of detailed billings did not preclude the Commission's careful work in making its lodestar calculation based on the records, the testimony, and its own expertise. The Commission rejected almost 50 percent of what

KCP&L sought. We view the evidence from the record as a whole, as did the Commission, that supports the findings of the Commission.

The prudence of any utility expenditure is tested in regards to both its purpose and its amount. *Maine Water Co. v. Public Utilities Com'n*, 482 A.2d 443, 453 (Me. 1984); see *Pennsylvania Pub. Util. v. Phil. Elec.*, 501 Pa. 153, 460 A.2d 734 (1983). "[I]t would be proper for a public utility company to be allowed rate case expenses when 'the public service company has reasonably and fairly employed necessary outside help in connection with . . . [the] case.' [Citation omitted.]" *Lone Star Gas Co. v. Corporation Com'n*, 648 P.2d 36, 41 (Okla. 1982).

We pass over the question about the reasonableness of the hourly rates used by the Commission when it made its lodestar calculation since CURB makes no complaint about those numbers.

Finally, we can find no error in the Commission's application of KRPC 1.5(a) as a standard to measure reasonableness of an attorney fee award. After all, it is the method approved by our Supreme Court for use by lower courts when making such a determination. *Davis v. Miller*, 269 Kan. 732, 751, 7 P.3d 1223 (2000).

*The Commission's order was not arbitrary or capricious.*

CURB argues that the Commission's order was arbitrary and capricious because it failed to adequately specify how it reached the $4.5 million in utility-only rate case expenses. Once again, CURB reiterates that it was arbitrary and capricious for the Commission to make what it admitted were "impossible" calculations. CURB also questions the Commission's ability to perform a detailed review but still achieve the $4.5 million that it initially determined before additional rate case expenses information had been provided. CURB contends the Commission's reliance on its own judgment and expertise made it impossible to determine how the Commission reached its decision and, thus, was arbitrary and capricious.

This attack differs from a challenge based upon a claim the agency decision is not supported by substantial competent evidence. Such an argument attacks the quality of the agency's *fact-*

*finding* by asserting the fact-finding is not supported by substantial evidence. On the other hand, an attack under K.S.A. 2011 Supp. 77-621(c)(8) claiming that an agency decision is arbitrary and capricious is an attack on the *quality* of the agency's reasoning. Thus, an agency's conclusion could be set aside, even if supported by substantial evidence, if it was based on faulty reasoning. *In re Protests of Oakhill Land Co.*, 46 Kan App. 2d 1105, 1115, 269 P.3d 876 (2012). Indeed, this court has recognized that " '[r]easoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite. . . .' [Citation omitted.]" *Home Telephone Co. v. Kansas Corporation Comm'n*, 31 Kan. App. 2d 1002, 1012, 76 P.3d 1071 (2003), *rev. denied* 277 Kan. 923 (2004).

In our view, when determining the prudence of rate case expenses, the Commission, like a district court judge, is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. *Cf. Kansas Industrial Consumers Group, Inc. v. Kansas Corporation Comm'n*, 36 Kan. App. 2d 83, 112, 138 P.3d 338, *rev. denied*, 282 Kan. 790 (2006); see *In re Petition of PNM Gas Services*, 129 N.M. 1, 27, 1 P.3d 383 (2000), where the court held the New Mexico Public Utility Commission may utilize its own expertise and experience with amounts of rate case expenses typically incurred by a utility in a comparable rate case proceeding.

If we carry the analogy with a district court further, in determining attorney fees under fee-shifting statutes, a district court is not required to engage in an hour-by-hour analysis of voluminous billing statements to determine the amount of reasonable hours expended on the case. Thus, we see no reason to compel the Commission to do so here when deciding rate case expenses. If the court reduces the amount of fees requested, however, the court must concisely and clearly explain the reduction so that an appellate court can determine if the reduction is justified. *Sheila A. v. Whiteman*, 259 Kan. 549, 565, 913 P.2d 181 (1996). In this case, the Commission's explanation of its reductions is truly not concise. This was apparently the first litigated case where the Commission chose to adopt a lodestar method of analysis when evaluating dis-

puted rate case expenses. The Commission detailed extensively how it reached the amount for reasonable attorney fees and gave specific details on the amounts of consultants' fees allowed and disallowed. The fact that the Commission extensively detailed some of its calculations and declined to describe the minutiae of the balance of the expenses is not, itself, arbitrary and capricious.

It is not the function of the appellate court to independently calculate " 'formidable accounts in order to determine the precise correctness of particular findings.' [Citations omitted.]" *Coonrod & Walz Constr. Co., Inc. v. Motel Enterprises, Inc., et al.*, 217 Kan. 63, 75, 535 P.2d 971 (1975). Although the appellate court is also an expert on attorney fees, we will not substitute our judgment for that of the Commission on the amount of attorney fees unless required to do so in the interest of justice. See *Snider v. American Family Mut. Ins. Co.*, 45 Kan. App. 2d 196, 200, 244 P.3d 1281 (2011), *rev. granted* 292 Kan. 966 (2011) (citing *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 [2006]).

In its brief, CURB ignores the testimony of its own expert witness. Although CURB proposed various alternatives for determining rate case expenses—including the arguments made in its brief—CURB also presented an expert witness who actually reviewed the detailed billings and determined that approximately $3.5 million was a reasonable figure for utility-only rate case expenses.

Finally, the careful, painstaking work reported by the Commission in performing its lodestar calculation, where the claims of three law firms and over $3 million in attorney and consultant fees were denied, was not arbitrary or capricious. In fact, it appears to be the sort of performance that the legislature has called upon the Commission to carry out. We cannot fault the Commission's performance on this point as it carefully explained at each step why it was approving some fee requests and denying others. We will not substitute our judgment for the Commission's. These decisions were not made on a whim.

*A note about the Commission and the legal standards for fee requests.*

It is important to maintain a proper perspective while examining the issues of this case. These are not ordinary civil actions but part of a legislative process as well. *Kansas Gas & Electric Co.*, 239 Kan. at 491. The general rule is that prudently incurred rate case expenses are among the reasonably necessary operating expenses that a public utility is entitled to recover in a rate-making proceeding. *Home Telephone Co.*, 31 Kan. App. 2d at 1015; *People v. Illinois Commerce Com'n*, 964 N.E.2d 510, 517 (Ill. App. 2011). Rate proceedings are a part of the normal course of business for a utility and function to establish just and reasonable rates. These proceedings are conducted for the benefit of both ratepayers and shareholders. Consequently, it is widely accepted that rate case expenses are one aspect of a utility's operating costs and are recoverable in a general rate proceeding. *Driscoll v. Edison Co.*, 307 U.S. 104, 120-21, 59 S. Ct. 715, 83 L. Ed. 1134 (1939). In *Driscoll*, the Supreme Court of the United States ruled: "Even where the rates in effect are excessive, on a proceeding by a commission to determine reasonableness, we are of the view that the utility should be allowed its fair and proper expenses for presenting its side to the commission." As with other rate-making issues, the Commission is tasked with weighing competing policies to determine the recovery of appropriate rate case expenses. " 'Rate case expenditures involve some degree of management choice and discretion whether to incur the expenses.' [Citation omitted.]" *Kansas Industrial Consumers Group, Inc. v. Kansas Corporation Comm'n*, 36 Kan. App. 2d 83, 111, 138 P.3d 338, *rev. denied* 282 Kan. 790 (2006). "In establishing rates, the KCC is required to balance the public need for adequate, efficient, and reasonable service with the public utility's need for sufficient revenue to meet the cost of furnishing service and to earn a reasonable profit." *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 773, 986 P.2d 377 (1999).

Our appellate courts have recognized that—due to the broad authority to determine just and reasonable rates—the Commission

is not bound to use any particular formula in valuing a public utility's property. *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, 60-61, 386 P.2d 515 (1963). The same rule should apply in determining other elements of rates. The Commission should receive and consider all relevant evidence and then determine " 'what formula, or combination of formulae, it believes should be used under the facts and circumstances of the case.' " *Kansas Gas & Electric Co.*, 239 Kan. at 496. For example, see *Farmland Industries, Inc.*, 24 Kan. App. 2d at 190, where this court upheld the Commission's decision to use a combined cost-of-service analysis in addressing rates of merged electric utilities.

In our view, the Commission has broad discretion in deciding what is a just and reasonable utility rate. See K.S.A. 66-101b; *Kansas Gas & Electric Co.*, 239 Kan. at 496-97. We think it wise for the Commission to adopt KRPC 1.5(a) as a yardstick to measure the reasonableness of an attorney fee request because it affords the Commission an immediate, well-thought-out system to make these decisions. Further, as time passes and more appellate decisions are reported, a growing body of law will provide the Commission a set of references that are useful for future inquiries.

In fact, it is the application of KRPC 1.5(a) that CURB seizes upon as claimed error. Citing *Davis v. Miller*, 269 Kan. at 748, CURB contends that the Commission failed to follow the standard it adopted and violated Kansas law because the utility's rate case expenses were not supported by "meticulous, contemporaneous time records." CURB argues that KCP&L's records for rate case expenses, which consisted largely of attorney fees, failed to show the specific tasks being billed. Therefore, CURB contends, no additional rate case expenses should have been allowed.

However, CURB relies exclusively on language in *Davis* that was not specifically defined or applied to the facts of that case. *Davis* was a complex postdivorce case involving a challenge to a postnuptial agreement. The trial court awarded Miller, the ex-husband, attorney fees under an indemnity provision in the agreement. In awarding fees, the district court considered the factors under KRPC 1.5(a) in evaluating the amount and nature of reasonable fees. The district court excluded one attorney's charges because he

was corporate counsel for Miller's business, but awarded substantial fees to two other attorneys.

On appeal, the Supreme Court held that fees not supported by " 'meticulous, contemporaneous time records' that show the specific tasks being billed *should not be allowed.*" (Emphasis added.) *Davis*, 269 Kan. at 748. The opinion contained no discussion of the adequacy or inadequacy of the attorneys' billings. One of Davis' challenges, however, was that the paralegal fees were improperly billed because they were merely clerical functions. The Supreme Court held that it would "take a line-by-line review of records that are not descriptive enough for this court (or the district court) to separate paralegal work from clerical work." 269 Kan. at 750. Still, the Supreme Court affirmed the attorney fee award, including the paralegal fees, finding the total amount awarded was not an abuse of discretion. 269 Kan. at 751.

CURB cites no authority beyond the general language in *Davis* to support its argument that attorneys, in billing for time worked, are precluded from using a "block-billing" method. The *Davis* court relied on *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1250 (10th Cir. 1998), when discussing the need for detailed records when requesting attorney fees. *Davis*, 269 Kan. at 748. In *Case*, the Tenth Circuit Court of Appeals acknowledged the need for meticulous recordkeeping when seeking attorney fees under federal fee-shifting statutes. However, the appellate court did not require district courts to deny attorney fees if the records lacked clarity. Instead, the Tenth Circuit recognized that a district court was "justified *in reducing* the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." (Emphasis added.) 157 F.3d at 1250.

Looking further in this area we note that although the Tenth Circuit has cautioned against block billing in civil rights cases, it has not established a rule mandating reduction or denial of a request for attorney fees if the attorney's records reflect block billing. *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). In *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998). In *Robinson*, the court recognized that the use of block

billing camouflages the nature of a lawyer's work and raises suspicions about whether all the work claimed was actually accomplished or was necessary.

The United States Supreme Court has recognized that parties seeking attorney fees should submit evidence supporting the hours worked and the rates claimed. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In discussing billing records, the Court merely noted that attorneys were not required to record in detail how each minute was spent, but should at least "identify the general subject matter of his time expenditures" to allow determination of whether the time was spent on successful or unsuccessful claims. 461 U.S. at 437 n.12. Granted, *Hensley* was focused on determining appropriate attorney fees when a prevailing party was only partially successful. Still the Court noted that there is "no precise rule or formula for making determinations" about reduction of attorney fee requests. 461 U.S. at 436. The Court noted that a "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436-37.

Likewise, other courts have recognized the problems with block billing when determining the necessity and reasonableness of attorney fee claims in many contexts. In addressing attorney fee requests when block billing is present, courts tend to apply an across-the-board reduction of the fees, not denial of the fees. See, *e.g.*, *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991); *Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 1000 (Colo. App. 2011); *Rosekrans v. Class Harbor Ass'n, Inc.*, 228 Or. App. 621, 641, 209 P.3d 411 (2009).

In at least one state, the appellate court found it was an abuse of discretion to totally *disallow* rate case expenses because of less than detailed documentation from the utility. In that case, the New Mexico Supreme Court reasoned that "[w]hen confronted with a questionable estimate of rate case expenses on one hand and irrefutable evidence that a utility has prudently incurred substantial, if unquantified, rate case expenses on the other, the Commission

cannot simply deny recovery altogether." *In re Petition of PNM Gas Services*, 129 N.M. at 26-27; see *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011).

Thus, to the extent CURB contends the Commission misinterpreted or misapplied the law because it allowed rate case expenses despite inadequate billing invoices by vendors, we remain unconvinced. The Commission has no statute or regulation setting forth how rate case expenses must be proved. When the Commission did request additional documentation from KCP&L through its prehearing officer, the agent did not request billings that accounted for each timekeeper's time for each different task during a single day; in fact, the prehearing officer indicated that level of detail was probably not necessary. Finally, by citing Kansas law pertaining to attorney fee awards in other contexts, CURB has failed to establish that Kansas law prohibits block billing or that KCP&L's documentation is inadequate as a matter of law. Thus, CURB has failed to establish that the Commission misapplied existing law when considering KCP&L's submissions and making an across-the-board reduction to the rate case expenses to reach what it considered a reasonable amount.

*Conclusion.*

Rate cases are truly unique. We wish to raise one additional point in this case, and that concerns the overall rate set by the Commission. At no point in its brief does CURB discuss any evidence regarding the impact of the "improper" amount of rate case expenses on KCP&L's overall rates charged to Kansas consumers. The Commission's final decision on overall rates authorized a $21,846,202 revenue increase, which included the subsequently challenged $4.5 million in rate case expenses. By limiting its discussion to the sole issue of rate case expenses allowed, CURB effectively converts this court's review of the Commission's overall decision into a single-issue rate-making proceeding.

"The rule against single-issue ratemaking recognizes that the revenue formula is designed to determine the revenue requirement based on *the aggregate costs and demands of the utility*. Therefore, it would be improper to consider changes to components of the revenue requirement in isolation. Oftentimes a change in one item of the revenue formula is offset by a corresponding change in another

component of the formula." (Emphasis added.) *Bus. & Prof. People v. Ill. Com. Comm'n*, 146 Ill. 2d 175, 244, 585 N.E.2d 1032 (1991).

CURB fails to explain how an award of rate case expenses over $2.1 million, which was to be amortized over a 4-year period, renders the Commission's overall determination of KCP&L's final revenue requirement outside the zone of reasonableness. This court may nullify a Commission order only when the decision is so unreasonable as to be outside the realm of fair debate. *Columbus Telephone Co. v. Kansas Corporation Comm'n*, 31 Kan. App. 2d 828, 836, 75 P.3d 257 (2003); *Western Resources, Inc. v. Kansas Corporation Comm'n*, 30 Kan. App. 2d 348, 352, 42 P.2d 162, *rev. denied* 274 Kan. 1119 (2002).

Basic calculations establish that the Commission's order allowed $1.1 million more in rate case expenses than supported by CURB's expert witness. This amount, amortized over 4 years, accounts for approximately $275,000—or 1.25 percent—of KCP&L's rate increase. The Commission's final decision authorized a $21,846,202 revenue increase. This increase was determined necessary to give KCP&L the opportunity to earn income to meet its determined revenue requirement of $149,121,865. Therefore, even if the Commission acted improperly with respect to its determination of rate case expenses, CURB has failed to establish that any error carried the Commission's overall rate determination outside the zone of reasonableness for its rates.

We affirm the Commission's order in all respects.