NOT DESIGNATED FOR PUBLICATION

No. 123,642

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NORTHEAST COMANCHE TRIBE, INC.,
and AVRAHAM SHILOH,
*Appellees*,

v.

CHRISTINA J. STUMPF, RONALD WARD,
MALCOM DICKINSON, and PETER C. MORSE,
*Appellants*.

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed October 7, 2022. Affirmed.

Marc S. Wilson, of Securitas Financial Law, LLC, of Overland Park, Scott E. Sanders and Corey M. Adams, of McDonald Tinker PA, of Wichita, John E. Franke and Matthew M. Clifford, of Franke Shultz & Mullen, P.C., of Kansas City, Missouri, and Craig C. Blumreich and Richard P. Billings, of Larson & Blumreich, Chtd., of Topeka, for appellants.

Jeff C. Spahn, Marcia A. Wood, and Matthew A. Spahn, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellees.

Before GREEN, P.J., ATCHESON and HURST, JJ.

PER CURIAM: The leaders of two factions in a not-for-profit corporation that basically functions as a social club for owners of Piper Comanche airplanes claim to be the duly elected officers of the organization—conflicting assertions that cannot both be correct. Apparently unable to resolve their rivalry through some amicable agreement, they brought the dispute to the Sedgwick County District Court. Plaintiff Avraham Shiloh filed a civil action on his own behalf and ostensibly for the organization seeking a

1

declaration that he has been fairly elected president, along with a slate filling the other officers' positions. Defendant Christina J. Stumpf holds herself out as the properly elected president of the corporation, and the three other defendants have laid claim to being corporate officers as part of her slate.

In their aggressive counter to Shiloh's suit, the defendants filed a motion to dismiss under the Kansas Public Speech Protection Act, K.S.A. 2021 Supp. 60-5320, claiming the action impermissibly intruded on their statutorily protected rights. The district court denied the motion. The Act provides that a defendant losing a motion to dismiss may file an interlocutory appeal of the district court's ruling. K.S.A. 2021 Supp. 60-5320(f)(2). Stumpf and her codefendants have done so, and that is what we have in front of us.

We conclude the district court reached the right result in denying the motion and, therefore, affirm the ruling. The litigation may now continue in the district court. See K.S.A. 2021 Supp. 60-5320(f) (district court proceedings stayed during interlocutory appeal). Plaintiffs have filed a motion to recover their attorney fees for this appeal from the defendants. We deny that motion.

ANALYSIS

*Procedural Posture Under the Act*

In deciding this appeal, we come at the issue from a different angle than the district court, as we now explain. Granting a motion to dismiss under the Act entails a two-step process. First, a defendant must show the plaintiff's legal action "is based on, relates to[,] or is in response to [the defendant's] exercise of the right of free speech, right to petition[,] or right of association" as defined in K.S.A. 2021 Supp. 60-5320(c)(3), (4), and (5). K.S.A. 2021 Supp. 60-5320(d). Second, if the defendant does so, the plaintiff may defeat the motion by presenting "substantial competent evidence" establishing a

2

"prima facie" basis for the legal action or the particular claim or claims the defendant has challenged. K.S.A. 2021 Supp. 60-5320(d). Here, the district court denied the motion because the defendants failed in the initial statutory showing; it, therefore, never considered the second step. We have chosen to skip over the first step and, instead, to consider the second step. The record compiled in the district court on the motion shows Shiloh has presented a prima facie case for a declaratory judgment resolving the immediate conflict between the rival groups claiming to be the duly elected corporate officers. That is sufficient to deny the defendants' motion to dismiss under the Act.

In the district court, the plaintiffs and the defendants briefed and argued both of the steps outlined in K.S.A. 2021 Supp. 60-5320(d). They have similarly addressed both in their appellate briefs. So the point has been fully ventilated in each court. The resolution of the second step, by its very nature, does not require the resolution of witness credibility or of conflicts in the evidence, since it depends on substantial evidence supporting a prima facie case. As such, the second step presents a question of law we may consider in the first instance. *In re Estate of Oroke*, 310 Kan. 305, 310, 445 P.3d 742 (2019). During oral argument, the lawyers agreed that we have the latitude to address either or both procedural steps in the process for ruling on a motion to dismiss under the Act.

In considering whether a party has presented a prima facie case, we look at whether the evidence, if unrebutted, would be sufficient to support a verdict or judgment for that party. See *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020); *State v. Haremza*, 213 Kan. 201, 206, 515 P.2d 1217 (1973). Similarly, substantial evidence has such relevance and scope that a person would accept it as supporting a factual proposition—a measure that does not factor in conflicting evidence. See *Cresto v. Cresto*, 302 Kan. 820, 835, 358 P.3d 831 (2015); *State v. Medrano*, 271 Kan. 504, Syl. ¶ 1, 23 P.3d 836 (2001). Because the second step entails applying undisputed facts making up the prima facie case to set legal standards, we can perform that function just as well as the

district court can, so there is no overriding need to remand for a new legal determination on the point. See *State v. Wilson*, 308 Kan. 516, 527, 421 P.3d 742 (2018); *State v. Randall*, 257 Kan. 482, 486, 894 P.2d 196 (1995); *State v. Parry*, 51 Kan. App. 2d 928, 930, 358 P.3d 101 (2015), *aff'd* 305 Kan. 1189, 390 P.3d 879 (2017).

*Plaintiffs' Prima Facie Case*

With that we turn to the pertinent facts. The Northeast Comanche Tribe, Inc. is a Kansas not-for-profit corporation and is ostensibly a plaintiff in this action, along with Shiloh. Owners of Piper Comanche airplanes who live in the Mid-Atlantic and Northeast states may become members of the organization. As an explanatory aside, we mention that the Comanche moniker covers various models of popular single- and twin-engine airplanes that Piper Aircraft, Inc. manufactured from the late 1950s to the early 1970s. We presume the aircraft name accounts for the regional not-for-profit corporation using Native American references such as calling the organization a "tribe" and its president a "chief." Why the corporation was formed and registered in Kansas is less apparent.

The Northeast Comanche Tribe sponsors regular "fly-ins"—largely social gatherings to which the attending members typically pilot their airplanes. The corporation also circulates a periodic newsletter and hosts educational programs on airplane safety and other matters. The Northeast Comanche Tribe is affiliated with the International Comanche Society, Inc., another Kansas not-for-profit corporation, that serves as an umbrella organization for various regional Comanche owners' clubs. The presidents of the regional organizations (or their duly chosen substitutes) sit on the governing board of the International Comanche Society. Members join both the International Comanche Society and the geographically appropriate regional organization and pay dues that are split between the two corporations. So the officers of the Northeast Comanche Tribe have control of and access to some of the dues. (The amount involved is neither readily apparent from the appellate record nor immediately relevant. The record, likewise, does

4

not conveniently yield membership numbers for the Northeast Comanche Tribe. Various sources suggest several hundred members.)

The dues-paying members of the regional organizations elect their respective corporate officers. Shiloh served consecutive terms as president of the Northeast Comanche Tribe and understood he could not run again. Stumpf then ran and was elected president in 2014. Some evidence in the record indicates annual elections were not held after that, and Stumpf and her slate simply continued in office. Stumpf has disputed the assertion. Shiloh lodged a complaint with the International Comanche Society. In response, the International Comanche Society organized and oversaw an election of officers for the Northeast Comanche Tribe in 2019 that Shiloh and his slate won. Meanwhile, Stumpf and her slate, who described themselves as the incumbent officers, conducted a separate election that their group won.

As a result, the Northeast Comanche Tribe has two slates each claiming to be the duly elected officers of the corporation. The International Comanche Society has recognized Shiloh as the president of the Northeast Comanche Tribe and identifies him as such in filings with the Kansas Secretary of State. Both Shiloh and Stumpf have submitted filings to the Kansas Secretary of State ostensibly as the corporate president of the Northeast Comanche Tribe. The conflicting claims of Shiloh and Stumpf have caused confusion and consternation within and without the Northeast Comanche Tribe.

*Plaintiffs Carry Their Burden Under the Act*

The record evidence establishes an immediate and real controversy—rather than an abstract or merely hypothetical dispute—supporting a declaratory judgment action. K.S.A. 60-1701 (district court has authority "to declare the rights, status, and other legal relationships whether or not other relief is, or could be sought"); see *In re Estate of Keller*, 273 Kan. 981, 984, 46 P.3d 1135 (2002) ("Declaratory relief is not to be

5

entertained for the purpose of settling abstract questions[.]"); *Santa Rosa KM Assocs. v. Principal Life Ins. Co.*, 41 Kan. App. 2d 840, 858, 206 P.3d 40 (2009) (purpose of declaratory judgments "is to settle actual controversies"). More particularly, Kansas corporation law affords the district court authority to resolve disputes over the election of corporate officers and to determine competing claims of persons to the same corporate office. K.S.A. 2021 Supp. 17-6515(a).

Shiloh has also submitted evidence supporting a prima facie case that he is the president of the Northeast Comanche Tribe, although that evidence is vigorously disputed. The International Comanche Society's bylaws recognize, charter, and assign members to the regional organizations, including the Northeast Comanche Tribe. The International's bylaws also require the regional organizations to hold annual elections for designated offices, including president or chief. In the district court, Shiloh submitted a declaration from Katherine Burrows, the International's president, in opposition to the motion to dismiss. While acknowledging the International Comanche Society and the regional groups are separate corporations, Burrows stated they are affiliated organizations with overlapping membership and shared officers and directors. In the declaration, Burrows also stated the International Comanche Society recognizes the 2019 election in which Shiloh was elected president of the Northeast Comanche Tribe to be valid. Burrows stated that the International's board of directors revoked Stumpf's membership in February 2019, rendering her ineligible to hold office with either the International or the Northeast Comanche Tribe. The other defendants in this action have been suspended or have ceased paying dues and, therefore, cannot hold office, according to Burrows.

Those circumstances outline a prima facie case for an active dispute properly presented in an action for declaratory judgment and for recognizing Shiloh as the duly elected president of the Northeast Comanche Tribe. And that is sufficient to warrant denial of the defendants' motion to dismiss under the Act. See K.S.A. 2021 Supp. 60-5320(d). On that basis, we affirm the district court's ruling.

6

*What We Do Not Decide*

We hasten to explain the limited scope of what we have decided. The defendants have vociferously contested many of the factual assertions Shiloh has offered, as well as the conclusions Shiloh would have the courts draw from those assertions. In short, the defendants say elections were conducted, the Northeast Comanche Tribe lacks bylaws, and the International Comanche Society overstepped its authority. They also suggest Shiloh should have petitioned the district court for an election rather than demanding the court take sides on the results of voting that had already taken place. As we have explained, however, we are to consider only substantial evidence supporting a prima facie case for Shiloh, as the party opposing the motion to dismiss. That is a slight burden to satisfy. And he has done so precisely because we cannot and do not consider factual conflicts presented in the evidentiary record. The arguments and the evidentiary materials the defendants have marshaled go to the merits of Shiloh's claim and conflict with the arguments and evidentiary materials he has compiled. The resolution of those conflicts and the determination of the merits of Shiloh's claims are for the district court on remand as this litigation progresses. The defendants' motion to dismiss under the Act no longer poses a legal impediment to that progression.

We express no opinion on the merits, and nothing we offer in this opinion should be construed as commentary on the ultimate outcome. Indeed, the Act explicitly states that the denial of a motion to dismiss because the responding party has presented a prima facie case cannot be given evidentiary weight or consideration for any other purpose. K.S.A. 2021 Supp. 60-5320(d).

We, likewise, have neither endorsed nor rejected the district court's determination that Shiloh's declaratory judgment action does not "concern" the defendants' exercise of statutorily protected rights under the Act. The district court may be correct. But the issue is a knotty one we need not decide.

The rights shielded in the Act more or less correspond to explicit protections in the First Amendment to the United States Constitution for free speech and for petitioning for redress of grievances and the allied, though implicit, protection to freely associate with others for such purposes. See *N.A.A.C.P. v. Button*, 371 U.S. 415, 430-31, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963) (acknowledging First Amendment right of association). The defendants argue that Shiloh's suit "concerns" their protected rights both in speaking out about how the Northeast Comanche Tribe has promoted or failed to promote pilot safety programs and in filing an unsuccessful civil action in the Michigan courts to prevent the International Comanche Society from conducting officer elections in 2019. See *Northeast Comanche Tribe, Inc. v. International Comanche Society*, No. 352490, 2021 WL1940876 (Mich. App. 2021) (unpublished opinion) (appellate court affirms dismissal of suit Stumpf and others orchestrated to halt 2019 election of Northeast Comanche Tribe officers). Whether those activities amount to protected conduct under the Act may be debatable notwithstanding the broad statutory definitions. Moreover, at least superficially, those activities seem attenuated from the central legal dispute Shiloh has presented in his petition and amended petition to determine the duly elected officers of the Northeast Comanche Tribe.

Conversely, however, the Act is intended to serve a salutary public purpose and should be liberally construed to that end. K.S.A. 2021 Supp. 60-5320(k). Kansas and many other states have adopted measures like the Act to combat a tactic corporate and other monied interests developed and deployed to stifle vocal opponents of their efforts to obtain favorable government accommodations, such as zoning changes and environmental rollbacks, or simply to silence unfavorable public comment about them. The corporations would file specious legal actions against their critics alleging defamation, improper interference with a prospective business advantage, or similar torts. Those actions have become known as strategic lawsuits against public participation or SLAPPs and are pursued not because they have merit—because they don't—but to punish the plaintiff's outspoken opponents with burdensome legal fees to defend the litigation

8

and to deter others from speaking up at all. *T & T Financial of Kansas City, LLC v. Taylor*, No. 117,624, 2017 WL 6546634, at *3-4 (Kan. App. 2017) (unpublished opinion); Mouriz, *Louisiana SLAPPs Back: An Analysis of Louisiana's Anti-SLAPP Law, Its Ambiguity, and How the State Should Remedy It*, 22 Loy. J. Pub. Int. L. 21, 24-25 (2021); Tate, *California's Anti-SLAPP Legislation: A Summary of and Commentary on Its Operation and Scope*, 33 Loyola L.A. L. Rev. 801, 802-06 (2000). Statutes, such as the Act, provide a comparatively speedy procedural mechanism for challenging and dismissing SLAPPs. See *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 135, 499 P.3d 1136 (2021); *T & T Financial*, 2017 WL 6546634, at *4. The Act also directs the district court to award reasonable attorney fees to a defendant successfully moving to dismiss a suit. K.S.A. 2021 Supp. 60-5320(g) (district court shall award attorney fees and consider sanctions against plaintiff and its lawyers if defendant prevails on motion and should award reasonable attorney fees to plaintiff if motion to dismiss is denied and is frivolous or interposed "solely . . . to cause delay").

Appellate courts in other states have held defendants must show a tangible connection (or, in somewhat ill-defined legal parlance, a "nexus") between the plaintiff's lawsuit and their statutorily protected activity. It is not enough that the defendants have spoken out or otherwise engaged on a particular issue and then get sued by the plaintiff for wholly unrelated claims, especially if those claims are otherwise colorable. See *Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057, 1062-63, 393 P.3d 905 (2017) ("nexus" under California anti-SLAPP statute requires the protected activity underlie or form the basis for plaintiff's challenged claim); *American Studies Assoc. v. Bronner*, 259 A.3d 728, 745-46 (D.C. Ct. App. 2021) (recognizing "nexus" requirement under District of Columbia anti-SLAPP statute). The first step for dismissal under the Kansas statutory scheme effectively imposes a broadly phrased nexus standard requiring the defendant to establish that the plaintiff's suit or a specifically challenged claim "concerns" the defendant's statutorily protected activity and, thus, "is based on, relates to or is in response to" the protected activity. K.S.A. 2021 Supp. 60-5320(d).

Beyond that general commonality, we hesitate to draw too much from appellate decisions construing other states' anti-SLAPP statutes because the measures often differ significantly in their definitions of protected activity and their procedures and substantive bases for granting relief. See *Saudi American Public Relations Affairs Committee v. Institute for Gulf Affairs*, 242 A.3d 602, 611 (D.C. Ct. App. 2020) (declining to rely on cases from other jurisdictions as persuasive authority, noting anti-SLAPP statutes "vary in language and scope," despite their "same general goals"). The Kansas anti-SLAPP statute went into effect in 2016 and has produced only one published appellate decision.

Nonetheless, the intersection of the Act's expansive public purpose and relaxed nexus requirement, on the one hand, with the rather indistinct fit between Shiloh's basic claim for a judicial determination of who are the properly elected officers of the Northeast Comanche Tribe and the defendants' claimed statutorily protected conduct, on the other, poses an intriguing and multifaceted legal problem. The district court rose to the challenge; we decline the opportunity. We may skip over the issue and consider, instead, whether the plaintiffs have presented a prima facie case for relief because that showing alone requires denial of the defendants' motion to dismiss. Although the two steps are logically and legally sequential in the sense a ruling adverse to a defendant on the first renders decision of the second superfluous and, thus, unnecessary, we have no prudential obligation to review the district court's determination of the first simply to get to the second if our resolution of the second will fully and finally dispose of the motion to dismiss.

Appellate courts may bypass difficult issues to settle appeals on dispositive sequential issues that are factually or legally much more clearcut. We routinely do so in habeas corpus appeals when we affirm a denial of relief because the movant cannot show prejudice resulting from his or her lawyer's representation, obviating the need to decide if the representation were constitutionally inadequate. See *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *Bailey v. State*, No. 124,101, 2022 WL 2188031, at *1-2

(Kan. App. 2022) (unpublished opinion). Similarly, in *Taylor v. Kansas Dept. of Health and Environment*, 49 Kan. App. 2d 233, 240, 305 P.3d 729 (2013), we simply assumed a state administrative policy should have been adopted through the notice and hearing process for regulations because the issue was less than obvious and found the plaintiff had failed to prove a constitutional due process violation, a much easier determination, and denied relief on that basis. Federal courts frequently extend qualified immunity to government agents defending civil rights suits when the plaintiffs fail to show that a claimed constitutional right was "clearly established" at the time the agents acted, bypassing the often more complicated determination of whether such a right exists at all. See *Pearson v. Callahan*, 555 U.S. 223, 236-37, 129 S. Ct. 808, 172 L. Ed. 565 (2009); *Evans v. Skolnick*, 997 F.3d 1060, 1065-66 (9th Cir. 2021); *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012).

We have appropriately followed a comparable pathway here in affirming the district court because Shiloh has demonstrated a prima facie case for declaring him to be the duly elected president of the Northeast Comanche Society. Cf. *Fawcett Trust v. Oil Producers Inc. of Kansas*, 315 Kan. 259, 288, 507 P.3d 1124 (2022) (affirming district court as reaching right result for wrong reason).

*Plaintiffs' Motion for Attorney Fees on Appeal*

Plaintiffs timely filed a motion to recover their attorney fees from the defendants for this appeal under Supreme Court Rule 7.07(b) (2022 Kan. S. Ct. R. at 52). The rule permits us to award reasonable attorney fees if the district court has the authority to do so. As we have indicated, the Act gives the district court the authority to order a defendant to pay a plaintiff's attorney fees if it denies a motion to dismiss and finds the motion to have been frivolous or filed "solely. . . to cause delay." K.S.A. 2021 Supp. 60-5320(g). Defendants have responded and oppose the attorney fee request.

11

The Kansas Supreme Court has adopted the eight factors in Rule 1.5(a) of the Kansas Rules of Professional Conduct (2022 Kan. S. Ct. R. at 333), bearing on an ethically "reasonable" attorney fee, as a guide for determining contractual or statutory fee awards. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940-41, 135 P.3d 1127 (2006). The criteria revolve around the time required to undertake the work, the complexity of the litigation, customary fees or rates for comparable legal services, constraints the litigation imposes on the lawyers in terms of deadlines or forgoing other work, the experience and skill of the lawyers, the ongoing professional relationship (if any) between the lawyers and the client, the value of what was at stake in the case and the result obtained, and whether the fee arrangement with the client is "fixed or contingent." 281 Kan. at 940-41; see Rule 1.5(a). The factors in Rule 1.5(a) have not changed since *Johnson* was decided.

Statutory attorney fee awards typically begin with a "lodestar" calculation based on a determination of the reasonable number of hours to accomplish the legal work multiplied by a customary or market hourly rate in the geographical area for lawyers with comparable experience. See *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (outlining lodestar method). Calculating a lodestar amount as the foundation for a "reasonable" statutory fee award comports with KRPC 1.5(a), especially because two of the factors are "fee[s] customarily charged in the locality for similar legal services" and "the time and labor required" to do the work. KRPC 1.5(a)(1), (a)(3) (2022 Kan. S. Ct. R. at 333). Those considerations largely replicate the backbone of a lodestar computation. The initial lodestar amount then can and should be adjusted, as necessary, to accommodate the remaining factors in KRPC 1.5(a) to arrive at a reasonable fee award. See *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1126-27, 284 P.3d 348 (2012) (upholding attorney fee award in utility rate case based on lodestar and KRPC 1.5[a]); *Hatfield v. Wal-Mart Stores, Inc.*, 14 Kan. App. 2d 193, 199, 786 P.3d 618 (1990) (statutory award of reasonable attorney fee for collecting delinquent medical benefits due workers compensation claimant to begin with computation based on reasonable hours multiplied by reasonable hourly rate).

12

In support of the attorney fee motion, the law firm representing Shiloh and the organization has submitted an affidavit from one of its partners who has appeared in this litigation. The affidavit recites the hourly rates for the three lawyers working on the appeal and the total number of hours each lawyer devoted to the appeal. The affidavit states the hourly rates are reasonable for the Wichita legal market based on the lawyer's knowledge as a longtime practitioner there and points to a 2017 survey of hourly rates the Kansas Bar Association prepared and published. A copy of relevant portions of the survey accompanied the affidavit.

The affidavit then provides the total hours each of the identified lawyers worked on the appeal and requests a fee award of $28,990. The motion and supporting materials do not provide any breakdown of the hours for each lawyer by discrete task performed and time spent on each task. In effect, the motion simply offers a single block bill entry for each lawyer. Block billing refers to fee requests or invoices containing large time increments—the blocks—for the lawyers, typically with minimal descriptions of the work done. *Citizens Utility Ratepayer Bd.*, 47 Kan. App. 2d at 1132; *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022). The practice thwarts judicial review of attorney fee requests for reasonableness because a block bill or invoice entry "camouflages the nature of a lawyer's work" and may be a façade for inefficiencies such as extensive lawyer conferences or grossly excessive time spent researching comparatively straightforward legal issues or drafting relatively routine papers. *Citizens Utility Ratepayer Bd.*, 47 Kan. App. 2d at 1132-33; *Johnston*, 36 F.4th at 1287. Those sorts of excesses usually should be stripped from statutorily mandated attorney fee awards. See *Hensley*, 461 U.S. at 434; *Cooper v. Great Mileage Rides, Inc.*, No. 105,184, 2012 WL 1072758, at *4 (Kan. App. 2012) (unpublished opinion).

We do not ascribe those disfavored practices to Shiloh's lawyers. But the attorney fee motion and the supporting documents preclude us from policing the request in any meaningful way. We, therefore, deny the motion.

Although we could attempt to fashion a reasonable fee award on our own, we decline to do so. See *Johnson*, 281 Kan. at 940 (judges considered to be experts on attorney fees and may draw on that expertise in making an award). Here, we do not have the benefit of bills or invoices as a starting place, so we have no idea what tasks each lawyer performed or some increment of time (even stated in sizeable blocks) associated with the tasks. We would be painting on an entirely blank canvas framed only by the final amount the lawyers have requested and the total hours each lawyer spent on the appeal. And that would be too creative an undertaking on our part. Because we have otherwise denied the fee request, we do not consider whether the defendants' appeal was frivolous or undertaken for delay—a statutory requirement under the Act for an attorney fee award to a plaintiff prevailing on a motion to dismiss.

*Conclusion*

We affirm the district court's order denying the defendants' motion to dismiss under the Kansas Public Speech Protection Act. We deny the plaintiffs' motion for attorney fees incurred in this appeal.